## GLOUCESTER ELECTRIC CO. v. DOVER.

(Circuit Court of Appeals, First Circuit. February 18, 1907.)

No. 683.

**1. ELECTRICITY—INJURY FROM LIVE WIRE—ACTION—ISSUES.**

In an action by a telephone lineman against an electric light company to recover for a personal injury received by plaintiff from contact with an uninsulated part of a wire strung in close proximity to a telephone pole on which plaintiff was working, the question at issue is not one of assumption of risk, but of due care and reasonable inspection on the part of defendant in relation to its wire, and of due care on the part of plaintiff in the manner of doing his work in view of the known danger.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Electricity, §§ 6–11.]

**2. SAME—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE.**

Plaintiff, who was a telephone lineman, was directed to climb a pole to assist in stringing a wire thereon. Defendant electric company maintained a highly charged electric light wire which passed within four inches of the pole, and on the side nearest the pole the insulation had been worn or burned off. There was already one man on the pole above such wire, and plaintiff testified that he looked at the wire from the ground and the insulation appeared to be all right. He went up on the opposite side, and at the time he reached the wire the pole was swayed, apparently by some action of the man above, and his hands came in contact with the exposed wire, resulting in his injury. *Held*, that such evidence did not warrant an inference of negligence on his part as matter of law, but such question was properly one for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Electricity, § 11.]

**3. NEGLIGENCE—ACTION—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.**

On the trial of an action for a personal injury, the charge of the court with respect to the question of contributory negligence *held* erroneous, in that it tended to lead the jury to determine the question of due care with reference to the particular plaintiff and his own situation and observation, and not by the standard of what a man of ordinary prudence would have done under the same circumstances.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 382–394.]

In Error to the Circuit Court of the United States for the District of Massachusetts.

John Lowell and James A. Lowell, for plaintiff in error.

William A. Pew, Jr., for defendant in error.

Before PUTNAM, and LOWELL, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. At the time of the injury complained of the Gloucester Electric Company, the defendant below, maintained an electric lighting system in and about the city of Gloucester, and Joseph R. Dover, the plaintiff below, was an employé of the New England Telephone & Telegraph Company, which maintained a system of wires in the same locality.

At the place of injury on East Main street there were two poles, one belonging to the telephone company, and the other to the electric company, and the poles were 8 or 10 feet apart. The defendant's pole

upon its arms and other appliances carried several insulated electric light wires, with a current of something like 2,550 volts. The telephone pole carried certain fire-alarm wires belonging to the city of Gloucester, and four bare iron wires and one cable of its own, and a second cable was being strung upon the telephone pole at the time of the injury. It was in connection with the stringing of this cable that the injury was sustained by the plaintiff. These poles are spoken of in the record as having a "street side," and a "field side," meaning, of course, that one side faces the street, and the other the field. The wires upon the two poles at this point were running in the same general direction, and the defendant's wire which caused the injury was about 20 feet from the ground, and passed the telephone pole on its street side 4 inches from it. The cable being strung upon the telephone company's pole was to be attached at a point above the electric wire in question. The electric wire which caused the injury was bare of insulation for 3 or 5 inches on its side next to the telephone pole, and there was a charred rut or depression, 3 or 4 inches long and something like a half inch deep, across the street side of the pole opposite the wire at the point of broken insulation. The plaintiff knew in a general way of the danger of live wires, and had been cautioned about them, and he as subforeman had told men under him to be careful and look out for live wires; but there was no evidence that he actually knew that the insulation was broken on the wire in question at the time of the injury. Dover had been working on a nearby pole, and was ordered down to relieve a kink in the cable, and it became necessary in the prosecution of the work for him to ascend the pole in question to a point above the defendant's wire which caused the injury. One Gillis was on the pole above him at the time. Before starting, the plaintiff looked up the pole to see if everything was clear so he could get up. He saw the location of the wires, and, among other things, that one of the electric wires was within 4 or 6 inches of the pole he was to climb, and, on being asked about the insulation, he said it looked to be all right. Gillis, who ascended the pole before him, testified that he supposed that they were electric wires and kept away, that in going up the pole opposite the wire he saw the break in the insulation, and in coming down he saw where the wire had rubbed against the pole and burned it.

It is pointed out by one side that there was considerable evidence tending to show that this break in the insulation, and particularly the charred mark on the pole, could be seen from the middle of the street some feet away, while it was suggested by the other side that such a mark would more readily catch the eye of one standing some distance from the pole than of one who was standing at its base.

The defendant claims, first, that, though Dover was working for the telephone company, the liability of insulation of electric wires to get out of repair is so well understood, and the danger is so far within the knowledge of an experienced lineman, that it should be held that he assumed the risk or hazard incident to the defendant's wire being maintained in proximity to those of the telephone company, for which he was working.

We need not inquire whether the doctrine of assumption of risk, which, in its general acceptation, applies to cases between employer and employé, and involves the idea of implied contract of assumption, might, under some conditions, be extended to a case in which the injury results from a careless condition of things caused by the negligence of an outside party in respect to an outside business, because there is nothing in the nature of the plaintiff's contract with the telephone company, or in the character of the work, so far as shown by the record, which would warrant the application of the doctrine of assumption of risk against the plaintiff and in favor of the defendant.

We think it a question of due care. So far as the defendant is concerned, it is a question of due care and reasonable circumspection in respect to the oversight of wires known to be dangerous when out of repair in a situation where it is the duty and the right of others to go in the prosecution of their work, and, so far as the plaintiff is concerned, a question of due care in the manner of doing a rightful work in the line of duty, in a situation which he knows necessarily involves some hazard. Knowledge that wires are liable to get out of repair, and when out of repair that they are dangerous to life, is something entering into the question of care as it applies to both parties.

The defendant's second position is that the plaintiff's case is controlled against him by contributory negligence, and that it was so unquestionably careless for a man who knew the liability of insulation to get out of repair, and the resulting danger, to merely look and then voluntarily bring himself into contact with a wire without the safeguard of a safety belt, that contributory negligence should be ruled as a matter of law.

We do not think the negligence so clear as to warrant this. The plaintiff knew that one man had ascended the pole before him; and when he was called upon to ascend the pole and do something in the line of his work, he looked and saw the proximity of the wire to the pole which he was to ascend, and testified that it seemed all right. He may, without thinking much of insulation, have meant by this that he thought he could climb the pole without touching the wire, because he said he went up on the field side, sliding his hands up the pole, and that he felt a sway of the pole as though the men had given a jerk and let up quick, and that was the last he remembered. If it were clear that he had seen the break in the insulation, or that he had climbed the pole and got in contact with the wire, without any intervening cause like the swaying of the pole, it would be quite a different thing. There is no evidence that he saw the lack of insulation. It is only argued that he ought to have seen it. This being so, and the unforeseen swaying of the pole being the probable cause of the contact, it reasonably, we think, became a question for the jury whether, under all the circumstances the plaintiff exercised the care of a prudent man in attempting to do what he did.

The defendant's third point is that, if the question of the plaintiff's care is one for the jury, it was not submitted under proper instructions, and upon this point we are compelled to hold with the defendant.

It is quite apparent, from the correct statement of the principle by

the learned judge upon the motion to set aside the verdict, that he had in mind the rule under which questions of care in respect to a given situation are submitted to a jury; but we think he failed in his instructions to convey to the jury a full understanding of the rule which should have governed them in their deliberations in respect to the proper standard of care and in respect to its application to the plaintiff. The effect of the instructions, we think, was to lead the jury to determine the question of the plaintiff's due care by reference to men of the character of the plaintiff and with reference to his own situation and observation, rather than by reference to the standard afforded by the man of ordinary prudence. Thus the learned judge said:

"I think you should take, gentlemen, this particular pole and form a judgment. How suspicious a place was it? How dangerous a place would it appear to the ordinary observation of a man of this character? How suspicious would it appear to a man of that kind? Was he fairly warned by the mere look of that place that there was danger that the insulation might be off, or that he was called upon to inspect for lack of insulation? Is the lack of insulation—is a bare spot on the wire—a thing of such common occurrence, gentlemen, on poles of this description, that men should always invariably inspect it and always make a close inspection?"

The last words quoted, we think, led the jury to understand the real issue in the case to be, did due care require the plaintiff to make a "close inspection" of the pole? A misleading standard of due care was thus suggested, which, so far as appears by the record, was not sufficiently corrected by other instructions.

Under the instructions, we think the jury would naturally turn the case in their own minds upon the situation and the particular man in question, and upon the question whether such a situation always requires close inspection. We are unable to find anything in the instructions which would convey to the jury the idea that the plaintiff's care should be determined with reference to the question as to what men of ordinary care and prudence would have done under the circumstances. The plaintiff's negligence, if there were negligence, would consist in the failure to use such care as a person of common prudence similarly situated would exercise. The question of ordinary caution in carrying on dangerous work, or the question of ordinary care and prudence, must be determined with reference to what men of ordinary prudence would do under the circumstances. Similarly situated and under like circumstances, of course, includes the idea of men of similar knowledge and experience; and ordinary care means such care as such men would ordinarily exercise in such a situation as the plaintiff was in.

The reason for this rule, quite likely, is found in the idea that greater security resides in an impersonal standard than in the best attempt of jurors to decide upon a particular personal aspect. In the one view, the jurors are bound to hold the plaintiff's rights subject to the standard of care which men of ordinary prudence would exercise, while in the other the jury would be relieved from that standard, and feel at liberty to say, "Well, he probably thought it was all right, or perhaps he did not think," or, "It cannot be reasonable that men should always and invariably make a close inspection." In the one aspect there is a standard; in the other there is no standard for measuring the care.

Of course, it stands to reason, under the rule of ordinary care, that

the jury must consider the entire situation. The knowledge of the dangerous elements involved, the duty to enter the field of hazard, where the dangers cannot always be seen, where the care of a reasonable man may or may not discover the danger of contact if things remain as he sees them, and the probability that danger would have been averted but for the intervention of some unforeseen force which precipitates the danger, are all things to be considered. Care cannot be measured in degrees applicable to a particular plaintiff in a particular situation of hazard. Due care in a particular situation can only be ascertained upon inquiry as to what men of ordinary prudence would have done in a situation like that in which the plaintiff was involved. This idea was not clearly brought to the attention of the jury.

The judgment of the Circuit Court is reversed, and this case is remanded to that court, with directions to set aside the verdict and for further proceedings not inconsistent with this opinion; and the plaintiff in error recovers its cost of appeal.