### DOVER v. GLOUCESTER ELECTRIC CO.

(Circuit Court, D. Massachusetts. June 29, 1907.)

#### No. 245.

**1. ELECTRICITY—DANGEROUS WIRES.**

A man who climbs a telephone pole in the rightful performance of his duty is not charged with knowledge that its rightful use is for uninsulated wires carrying a dangerous current of electricity.

**2. ELECTRICITY—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**

In an action for injuries to a telephone lineman by a shock received by an uninsulated highly charged electric wire as he was climbing a pole, whether he was negligent in failing to discover the defect and danger before ascending the pole *held* for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Electricity, § 11.]

**3. DAMAGES—EXCESSIVENESS—PERSONAL INJURIES.**

Plaintiff, a telephone lineman, who had been a foreman, while climbing a telephone pole, received nearly 2,000 electric volts from a wire from which the insulation had worn, which caused plaintiff to fall from the pole, a distance of 25 feet. Prior to his injury he had been in good physical condition, but had been continuously sick thereafter, and nearly two years after the injury there was still evidence of inflammation, adhesions in the vicinity of the liver, and neurosis. One physician of high skill and character testified there was nothing the matter with plaintiff which could be attributed to the accident, but there was other medical evidence to the contrary. *Held*, that a verdict in favor of plaintiff for $5,200 was not excessive.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 357, 365, 367, 368.]

Action by Joseph R. Dover against the Gloucester Electric Company. A verdict was rendered in favor of plaintiff for $5,200, and defendant moved for a new trial. Denied.

William A. Pew, for plaintiff.
John Lowell, for defendant.

HALE, District Judge. This case now comes before the court upon a motion by the defendant for a new trial, upon the ground that the

verdict is against the law and the evidence, and that the damages are excessive. The defendant contends that, while there might have been a scintilla of evidence upon which the jury could base a verdict, the overwhelming weight of the evidence is that the plaintiff was guilty of such negligence as to preclude recovery.

The plaintiff was an employé upon the lines of a telephone company. He had been a foreman, and had experience in the class of work committed to him. In the course of his employment he was required to climb a pole on which were telephone wires, and also highly charged wires of the defendant company. The insulation had been worn from one of the defendant's wires, and the wire had become an object of danger. It appears from the plaintiff's testimony that he approached the pole, in the ordinary course of his employment, walking upon a wall on the side of the road; that it was impossible for him, from the wall, to detect the absence of insulation on the wire, or to see a burnt place which the uninsulated wire had made upon the pole. There is evidence, however, that by going a little distance into the road he might have seen the defective conditions. He did not see them; but proceeded to climb the pole, having his right hand around the pole and sliding it up the pole as he ascended. With his left hand he was preventing the kinking of the cable which other telephone men were running from pole to pole. According to his testimony, he had ascended some 24 or 25 feet when he felt the pole sway as if the men working on the cable had given a sharp pull, and that was the last he knew. A burn was apparent upon the plaintiff's right wrist. His shoe was produced in court, and appeared to have been burned through, under the climbing spur. There was evidence tending to show that the pole was swayed by the pulling of the cable by the telephone linemen.

Plaintiff admitted that he had been instructed generally that, before climbing a pole, he should see that such pole was safe; but he had never worked near this pole before, and his attention had not been called to the defective wire or to the burn on the side of the pole. He had seen other workmen going up and down the pole in safety. He was called upon to climb it in the course of his business. He approached it in the way I have described, and did not, as a matter of fact, see the defects, either before beginning to climb the pole or during his ascent. It is earnestly contended by the defendant that, if he had gone a little distance into the road, he could have seen the defective conditions, and that, if he had been in the exercise of due care during his progress up the pole, he would have seen those conditions.

This was the second trial of the cause. At the first trial the plaintiff obtained a verdict. Judge Brown, the learned judge before whom the cause was tried, refused to set that verdict aside as being against the law and the evidence. He did, however, grant a new trial on the ground of excessive damages, unless the plaintiff should remit a certain sum. In refusing to grant a new trial for errors in law, he made a comprehensive reference to the testimony which was before the jury on that trial. He also commented on Chisholm v. New England Telephone & Telegraph Co., 176 Mass. 125, 57 N. E. 383, and Law v. Central Dist. Printing & Telegraph Co. (C. C.) 140 Fed. 558. I agree

with his comment upon those cases, and with his conclusion that it is the duty of the court to leave to the jury the question of due care under the special circumstances of each case. I think it will be seen that this is the only way in which such a case can be passed upon competently, in order to do full justice in the premises. It is true that in railroad cases the dangers upon a railway are so well known that failure to look and listen is as a matter of law held to be negligence; but a railroad track is for the purpose of the running of railway trains. The man who approaches it has full knowledge that such is its primary and rightful use; and the use of it by him is subject to its dominant use. On the other hand, the man who climbs a telephone pole is not charged with knowledge that its rightful use is for uninsulated and dangerous wires. He knows, on the other hand, that there is a duty to keep the wires insulated; and that, while the purpose for which the structures are used renders some danger from electrical currents unavoidable, he has some reason to expect that the wires will be kept protected. He knows, to be sure, that it is difficult to do this, and that there is liability that there may be a lack of insulation of some wire; but the risk of defective insulation varies with the circumstances, as Judge Brown has pointed out. And the case is not like that of a railroad track, where the danger is always well known, distinct, and incident to its lawful use.

After Judge Brown's decision in the matter of a new trial, this case went to the Circuit Court of Appeals. In speaking for that court, Judge Aldrich said:

"Knowledge that wires are liable to get out of repair, and when out of repair that they are dangerous to life, is something entering into the question of care as it applies to both parties. * * * There is no evidence that he saw the lack of insulation. It is only argued that he ought to have seen it. This being so, and the unforeseen swaying of the pole being the probable cause of the contact, it reasonably, we think, became a question for the jury whether, under all the circumstances, the plaintiff exercised the care of a prudent man in attempting to do what he did."

The testimony upon which the jury found this verdict is not the same as that upon which the Court of Appeals passed in arriving at their conclusion; but, in my opinion, it is not so different as to require a different rule of law. For the purposes of this case, I must assume that the decision which I have cited states the doctrine of the federal courts upon this subject. In accordance with Judge Aldrich's opinion, I think this court must say that the question of due care of the plaintiff in a case like this must properly be left to the jury to decide under the special circumstances of each case. I decline to grant a new trial for error of law.

The defendant contends, also, that the damages are excessive. The date of the injury was August 18, 1905. Before that time the plaintiff was in good physical condition. He has been sick ever since. The evidence shows that he received nearly 2,000 electric volts, and fell at least 25 feet, and that from that time he has suffered. He has now the pained and pinched appearance of a sick man. The testimony tends to show that there is still inflammation, that there are adhesions in the vicinity of the liver, and that there is some evidence of neurosis. Some

of the evidence indicates a permanent injury. There is, however, a conflict of testimony. One doctor of great skill and learning, of the highest character and of unquestioned honesty, testified that there was nothing the matter with the plaintiff which could be attributed to the accident. When he testified, I could see that his testimony did not tend to persuade the jury; but that, on the other hand, it prejudiced them against the witness, on account of the summary and severe view which he expressed, and that it may have influenced them against the defendant. The witness was unquestionably conscientious in his belief; but such belief was contrary to that of the other physicians who testified, and at great variance with the conclusion to which the jury came. It is sometimes the duty of the court to prevent any unfair prejudice from controlling the jury. But in this case the defendant deliberately offered the testimony to which I have alluded. Its prejudicial effect upon the jury cannot be a reason for the court to grant a new trial. While the physician to whom I refer was the only one who testified that the plaintiff was not suffering from the injury which forms the basis of this case, there was much conflict of evidence among the medical men. By his appearance, as well as by his testimony, the plaintiff himself induced the belief in the minds of the jury that he had received a painful and permanent injury. From a careful analysis of the testimony, in my opinion, there was evidence from which the jury could fairly find that his injury was permanent. It is the province of a jury to pass upon cases of conflicting evidence. In this case the jury evidently believed the testimony of the plaintiff and his physicians, and did not give credence to the medical testimony offered by the defendant. After a full examination of all the evidence upon this question, I cannot say that the jury have exaggerated the damages; and I conclude that it is not my duty to disturb the verdict.

The motion of the defendant for a new trial is denied.