Argued at Pendleton October 31, 1923, affirmed January 22, rehearing denied February 26, 1924.

# GRACE M. SAYLOR, ADMX., *v.* ENTERPRISE ELECTRIC CO.

(222 Pac. 304; 223 Pac. 725.)

**Electricity—Negligence as to Person Entering Highway Held Question for Jury.**

1. In an action for death of a farmer, killed while entering upon a public highway encumbered with defendant's transmission lines carrying a dangerous current, evidence that defendant permitted its lines to sag, and that by reason thereof, a hay derrick, while being moved, came in contact with defendant's lines, and that, while trying to extricate the same, deceased was electrocuted, *held* sufficient to take the question of negligence of defendant to the jury.

**Electricity—Care Required as to Persons Using Highway.**

2. Electric power companies, in using a highway for the transmission of electricity, are under duty to exercise care as to the location and construction of its lines, so not to injure persons using the highway.

**Electricity—Traveler Using Highway Bound to Use Reasonable Care.**

3. While an electric company owes a duty of reasonable care to protect persons using a highway from harm arising from the construction and maintenance of its transmission lines, a person using the highway is likewise bound to use reasonable care for his own protection.

**Electricity—Burden of Proving Contributory Negligence on Defense.**

4. In an action for negligence of an electric company in allowing wires to sag, resulting in death of plaintiff's intestate, defendant has the burden of proving contributory negligence.

**Electricity—Contributory Negligence of Person Entering Highway Held for Jury.**

5. In an action for death of a farmer, killed while entering a public highway encumbered with defendant's transmission lines, carrying a dangerous current of electricity, where the evidence showed that deceased was moving a hay derrick which came in contact with one of the lines, and that, while using a pole or board

1. Liability for injury or death of traveler coming in contact with electric wire in highway, see notes in 4 Ann. Cas. 709; Ann. Cas. 1913D, 912; 31 L. R. A. 566; 22 L. R. A. (N. S.) 1169; 1 B. R. C. 797.

See 20 C. J., pp. 374, 392; 29 Cyc. 628, 631; 38 Cyc. 1553.

to extricate the same, was electrocuted, *held* that it could not be said as a matter of law that deceased was guilty of contributory negligence.

**Negligence—Question of Contributory Negligence for Jury.**

6. Where there is a dispute as to the facts, or where minds might draw different conclusions, the question of contributory negligence is for the jury.

**Electricity—Uninsulated Wires Along Highway Constitute a Nuisance.**

7. Uninsulated wires, conveying a dangerous current of electricity along a public highway, and obstructing rightful travel upon such highway, constitute a nuisance.

**Pleading—No Error in Striking from Answer Defendant's Allegation That Wires Would have Been "Killed" at Decedent's Request.**

8. In an action for death of a farmer, killed by coming in contact with defendant's transmission lines, no error was committed in striking from defendant's answer an allegation "that the wires would have been killed to permit the moving of a hay derrick by decedent"; it not being shown that decedent had any information on the subject.

**Electricity—Evidence as to Height of Transmission Wire Held Competent.**

9. In an action for death of a farmer, killed by coming in contact with defendant's transmission lines, evidence relating to the height of the wire on the sides of a gateway through which decedent attempted to move a hay derrick was competent, in view of testimony relating to the sag of the wire at the gate.

## ON PETITION FOR REHEARING.

**Trial—Evidence must be Considered Most Favorably to Plaintiff.**

10. On a motion for nonsuit, all competent evidence in the record is entitled to be considered most favorably to plaintiff, and every reasonable intent and fair inference which can be drawn therefrom must be made in his favor.

**Negligence—Contributory Negligence Question for Jury Unless but One Conclusion Possible from Evidence.**

11. Whether a person charged with contributory negligence acted as a reasonably prudent man in his situation and with his knowledge would have acted under like circumstances must be determined by the jury, unless the testimony is so plain against him that reasonable men could arrive at no other conclusion than that he was negligent.

**Electricity—Mere Knowledge of Dangerous Wires not Contributory Negligence as Matter of Law.**

12. Mere knowledge on the part of one attempting to disengage a hay derrick from electric wires of the dangerous voltage being carried on same does not constitute contributory negligence as a matter of law.

From Wallowa: J. W. KNOWLES, Judge.

In Banc.

This is an action for damages, prosecuted by Grace M. Saylor, as administratrix of the estate of her deceased husband, Carl Saylor, who was killed on July 19, 1921, by a shock from an electric current. Saylor was a farmer, and at the time of the accident he was harvesting his crop of hay grown upon the North McCully ranch, situate a short distance north of Joseph, Wallowa County, Oregon, which he had leased from F. D. McCully. Another ranch situate about a mile and a half east of the town of Joseph is referred to in these proceedings as the East McCully ranch.

The Upper Prairie Creek country, which is contiguous to the east and north sides of the town of Joseph, is an agricultural district, approximately five miles wide and something less than ten miles in length. Abundant crops of hay are grown and harvested annually in that section of the country, and for the purpose of stacking their hay the farmers of the district make general use of movable implements known as hay derricks. In harvesting their crops it was the custom of the farmers in that district to move such derricks from field to field and from farm to farm, through gateways, over the public roads of the district and of the county, all of which it is alleged defendant well knew.

At the time of the accident, Saylor was transporting a hay derrick, by means of two spans of horses hitched thereto, from the East McCully ranch to the North McCully ranch. In so doing, it was necessary for him to drive to the public highway through a

gateway located about 200 feet northeast of the dwelling-house situate on the East McCully ranch. This gateway was used by Saylor and others as a place of ingress to, and egress from, the ranch, when leaving or going upon the highway, which extended along the east and north sides of the East McCully ranch.

On July 19, 1921, the day of the accident, and prior thereto, the defendant was, and had been, transmitting, from one of its plants at Joseph, Oregon, to various farmers living in Upper Prairie Creek district, through transmission wires fastened to poles located at intervals of 300 feet, along the county road and on the east line of the East McCully ranch, electricity of a dangerous voltage. The McCully gateway, at which point the accident occurred, was about midway between two poles. The transmission wires were strung over and above the gateway opening from the McCully ranch into the county road.

After alleging the duty of the defendant company to use every device, care and precaution which it is practicable to use for the protection of life and limb, the plaintiff avers that the defendant suspended its transmission wires in a careless manner, and particularly over the gateway, at a height of about seventeen feet above the ground; that while such wires were carelessly suspended at that height above and across the gateway, the defendant negligently conveyed over its wires electricity of a dangerous voltage, and that its wires were uninsulated; that by reason thereof, persons who were engaged in their lawful duties, in making ingress to and egress from the county road, were obliged to expose themselves to the hazards and dangers incident thereto.

"That on the 19th day of July, 1921, and for a long time prior thereto, Carl Saylor, as lessee, was engaged in harvesting hay upon the said North McCully ranch, and that as part of said work or said duty, the said Carl Saylor was transporting from East McCully ranch to the leased ranch north of Joseph, by way of said gateway and over the county road, the aforesaid hay derrick, which hay derrick the said Carl Saylor was, that day, using in his work of harvesting hay; and that while so transporting said hay derrick ⎰from the East McCully ranch to the county road, said hay derrick, and particularly that part of said hay derrick consisting of a wire or steel cable, came into contact with the transmission wires herein referred to, and that by reason of the careless and negligent manner in which said transmission wires were suspended by defendant along the road and over and above and across said gateway as hereinbefore set out, electricity of a dangerous voltage was deflected over said hay derrick, and particularly said cable, and while said electricity was so deflected over said cable, and while Carl Saylor was attempting to transport said derrick through said gateway from the field to the county road to the said leased ranch of F. D. McCully, north of Joseph, said Carl Saylor, by reason of the negligence of the defendant, as hereinbefore set out, received a violent shock of electricity from said wire * * , then and there burning and killing the said Carl Saylor."

Judgment was sought in the sum of $7,500.

The defendant, answering, denied the material allegations of the complaint charging it with negligence, and averred contributory negligence of Saylor as a defense. Among other things it alleged:

"That in moving said hay derrick from said land in possession of said Lyon, said wires would not clear said hay derrick, and said hay derrick would not pass under said wires without coming in contact therewith, and said Carl Saylor * * well

knew that said wires would not clear said hay derrick, * * and * * well knew that said wires were carrying a high current or voltage of electricity, and that it was dangerous to permit or allow said hay derrick, or any part thereof, to come in contact with said wires.

"That on said 19th day of July, 1921, the beam of said hay derrick was placed in such position that in moving said hay derrick * * said wires would not clear said beam and said hay derrick would not pass under said wires without said beam coming in contact therewith, although said beam could have been, and should have been, placed in such position that said wires would not come in contact with said beam in moving said hay derrick under said wires and said Carl Saylor, at the time of attempting to move said hay derrick, and prior thereto, well knew that said wires would not clear said beam, and well knew that said beam would come in contact with said wires, and well knew that said beam could have been placed, and should have been placed, in such position that the same would not come in contact with said wires in the moving of said hay derrick.

"That said Carl Saylor, * * well knowing that said wires were carrying a high current or voltage of electricity, and that it was dangerous to permit or allow said hay derrick, or any part thereof, to come in contact with said wires, carelessly and negligently moved said hay derrick into and against said wires * * .

"That after said hay derrick and said metal part thereof * * had come in contact with said wires, said Carl Saylor and an employee * * each received a shock of electricity by touching and coming in contact with said hay derrick, or some metal part thereof, or some metal thereon.

"That * * Carl Saylor was told and warned to get away from said hay derrick and not to come in contact therewith * * .

"That after said hay derrick and said metal part thereof * * had come in contact with said wires, said Carl Saylor well knew that said hay derrick and said

metal part thereof and said metal cable thereon were charged with electricity, and well know that it was dangerous to be or remain on or about said hay derrick, or to come in contact therewith, or with any part thereof, or with said metal part thereof, or with said metal cable thereon, and well knew that by reason of the same being charged with electricity there was danger of his being killed if he should be or remain on or about said hay derrick or should come in contact therewith, or with any part thereof, or with said metal part thereof, or with said metal cable thereon.

"That * * said Carl Saylor, well knowing that it was dangerous to be or remain on or about said hay derrick or to come in contact with any part thereof, or with the metal part thereof, * * and well knowing that by reason of the same being charged with electricity there was danger of his being killed if he should be or remain on or about said hay derrick or should come in contact therewith, or with any part thereof, or with said metal part thereof, * * carelessly and negligently went upon said hay derrick and carelessly and negligently remained on and about said hay derrick, and carelessly and negligently came in contact with said hay derrick, or with some part thereof, or with said metal part thereof, or with said metal cable thereon, and by reason thereof a current of electricity was conducted from said wires and through and over said hay derrick and said metal part thereof, and said metal cable thereon, and said current of electricity passed through the body of said Carl Saylor, then and there burning and killing said Carl Saylor.

"That the death of said Carl Saylor * * was caused solely by the means and in the manner as herein alleged, and was solely the result of, and was caused solely by, his own acts and his own carelessness and negligence * * ."

On motion of plaintiff, the court ordered the following struck from the answer:

"Although said wires could and would have been killed to permit the moving of said hay derrick, and shortly after the death of said Carl Saylor, as hereinafter alleged, said wires were killed, in order to permit the removal of said hay derrick."

Plaintiff replied, denying all new matter contained in the answer. The trial resulted in a verdict in favor of plaintiff and against the defendant in the sum of $7,500.

Defendant appeals, assigning error of the court in granting plaintiff's motion to strike a portion of defendant's answer, in the reception of evidence, in denying defendant's motion for nonsuit and for a directed verdict, and in giving certain instructions and refusing other instructions requested by the defendant.                      AFFIRMED.

For appellant there was a brief and oral argument by *Mr. A. S. Cooley.*

For respondent there was a brief and oral argument by *Mr. Daniel Boyd.*

BROWN, J.—1, 2. The evidence contained in the record proves that the plaintiff's intestate was accidentally killed while entering upon a public highway which was encumbered with defendant's transmission lines carrying a dangerous current of electricity. We assume that the defendant's lines were lawfully within the highway. However, it had no right to interfere with the reasonable use of that road by Saylor in transporting a farming implement over it. There is much uncontroverted evidence in the record supporting plaintiff's allegation that it was a well-established custom among the farmers of the Prairie Creek country to move from field to field and from

ranch to ranch over the public highway, hay derricks of the size, dimensions and character of the derrick that was being transported by Saylor at the time of the accident.

As was said by the Supreme Court of California in a similar case:

"It was the duty of the defendant to ascertain this fact and to have erected its wires high enough so as to permit free and safe passage of said derricks under them, and to prevent danger." *Fairbairn* v. *American River Elec. Co.,* 179 Cal. 157 (175 Pac. 637).

To similar effect, see *Godfrey* v. *Kansas City L. & P. Co.* (Mo.), 253 S. W. 233.

"In all cases wherein * * electric light and power * * companies obtain and exercise the privilege of erecting and maintaining poles, wires, lamps and other appliances in the public streets, they are bound to know that the maintenance of such appliances in and about the highway may create dangers to persons exercising the primary and paramount right of passage along or across the same. The companies are not insurers of the safety of the public against all dangers arising from the lawful placing in the street of the appliances pertaining to the business carried on by the companies, but they are bound to know the dangers which may naturally be caused by such use of the streets and to guard against them by the exercise of all the foresight and caution which can be reasonably expected of prudent men under such circumstances." 1 Joyce on Electric Law (2 ed.), § 438.

The defendant company, in using the county road along the McCully ranch for the transmission of electricity, was under duty to exercise care as to the location and construction of its lines, and so to use and maintain such lines as not to injure persons using the highway. Notwithstanding this duty, the

defendant permitted its lines to sag at the McCully gateway, where Saylor was killed.

"It is the duty of an electric company to watch with reasonable care and diligence its wires and poles, and to prevent them from getting into such a condition or position as to endanger the safety of persons using the highway." 2 Elliott, Roads and Streets, § 1071.

In *Carroll* v. *Grande Ronde Electric Co.*, 47 Or. 424 (84 Pac. 389, 6 L. R. A. (N. S.) 290), we read:

"Electricity is a natural force, the power of which is fully comprehended only by experts."

In *Greenwood* v. *Eastern Oregon Power Co.*, 67 Or. 433, 442 (136 Pac. 336), the injured person was moving a hay derrick ten feet higher than the one in the case at bar. In that case, Mr. Chief Justice McBRIDE, in discussing the care required of a power company in the construction and maintenance of its wires, wrote:

"The measure of care required of defendant is well stated in *Shank* v. *Great Shoshone etc. Water Power Co.* (C. C. A.), 205 Fed. 833, which was a case arising, as did the one at bar, from a hay derrick having come in contact with an electric wire.

"Judge MORROW, referring to the defendant in that case, said: 'It was clearly its duty to have used every reasonable precaution to raise and keep its high power transmission wires sufficiently high above ground for the safe passage of such structures as the plaintiff was engaged in moving at the time and place he was injured. Such structures were common to that locality. It was not of unusual height, and its passage along the highway over the bridge was to be expected at any time.' To the same effect are *Perham* v. *Portland General Elec. Co.*, 33 Or. 451 (53 Pac. 14, 24, 72 Am. St. Rep. 730, 40 L. R. A. 799); *Fitzgerald* v. *Edison Elec. Mfg. Co.*, 200 Pa. 540 (50 Atl. 161, 86 Am. St. Rep. 732); *Ermis* v. *Gray*, 70 Hun, 462 (24 N. Y. Supp. 379)."

In *Gentzkow* v. *Portland Ry. Co.*, 54 Or. 114 (102 Pac. 614, 135 Am. St. Rep. 821), it is said:

"The defendant employing in its business an agency so deadly and dangerous as electricity is held to exercise the utmost degree of care in the construction, maintenance, inspection and repair of its wires so as to keep them harmless at places where persons are liable to come in contact with them."

From *Clayton* v. *Enterprise Electric Co.*, 82 Or. 149 (161 Pac. 411), we quote:

"The care demanded of electric companies must be commensurate with the danger, and where their wires are carrying a high and dangerous current of electricity, the law imposes upon the company the utmost degree of care in the construction, inspection and repair, so as to keep them in a safe condition at places where persons are liable to come in contact with them."

In the leading case of *Perham* v. *Portland E. Co.*, 33 Or. 451, 478 (53 Pac. 14, 24, 72 Am. St. Rep. 730, 40 L. R. A. 799), the court said:

"Where their wires are designed to carry a strong and powerful current of electricity, so that persons coming in contact with them are certain to be seriously injured, if not killed, the law imposes upon the company the duty of exercising the utmost care and prudence to prevent such injury; and whether such care has been exercised in a given case is ordinarily for the jury."

There was ample evidence from which the jury could find that defendant was negligent.

The only difficult point in this cause is the question of contributory negligence raised by the defendant.

3. While the electric company owed a duty of reasonable care to protect Saylor from harm arising from the construction and maintenance of the trans-

110 Or.—16

mission lines at the point where the injury was inflicted upon him, he was likewise in duty bound to use reasonable care for his own protection.

4. The defendant pleads that Saylor was guilty of contributory negligence. The plea is denied by the reply. Upon this issue the defendant has the affirmative.

5. Are the established facts and circumstances surrounding the accident so plain and clear that this court can say, as a matter of law, that Saylor was guilty of contributory negligence?

In the case of *Toney* v. *Interstate Power Co.*, 180 Iowa, 1362 (163 N. W. 394), the Supreme Court of Iowa wrote the following concerning contributory negligence as a matter of law:

"The question of law does not arise, save only in those exceptional cases where the plaintiff's want of reasonable care is so manifest and flagrant as to at once convince all fair and candid minds that he did not exercise the caution for his own safety which marks the conduct of ordinarily prudent men. He is not held to an ideally high standard of care as being free from all grounds of criticism. It is enough if the evidence be such that the jury may properly say that he acted as carefully as ordinary men of ordinary judgment and experience usually do under like circumstances. * * It may be conceded that plaintiff knew of the existence of the power line and the dangerous character of the current carried thereon. He may also have known that the line was not guarded at that point, and yet we cannot say, as a matter of law, that he was manifestly and clearly negligent in failing to discover at once that the wire which escaped him had bounded or recoiled over the power line."

In *Rambo* v. *Empire Dist. Electric Co.*, 90 Kan. 390 (133 Pac. 553) it was claimed that the deceased

was guilty of contributory negligence. The court said, among other things:

"A person in the situation of the deceased cannot be charged with contributory negligence merely because he failed to take available measures to insure safety beyond all doubt. The question still remains whether or not a reasonably prudent man would, under all the circumstances, act as he did."

6. Where there is a dispute as to the facts, or in case fair minds might draw different conclusions, the question of contributory negligence is one of fact for the jury: *Greenwood* v. *Eastern Oregon Power Co., supra; Webb* v. *Heintz,* 52 Or. 444 (97 Pac. 753); *Palmer* v. *Portland Ry., L. & P. Co.,* 56 Or. 262 (108 Pac. 211); *Gloucester Electric Co.* v. *Dover,* 153 Fed. 139, 155 Fed. 256 (82 C. C. A. 291); *Staab* v. *Rocky Mountain Bell Telephone Co.,* 23 Idaho, 314 (129 Pac. 1078); *Commonwealth Electric Co.* v. *Rose,* 214 Ill. 545 (73 N. E. 780), affirming 114 Ill. App. 181; *Ziehm* v. *United Electric Light etc. Co.,* 104 Md. 48 (64 Atl. 61); *Teachout* v. *Grand Rapids etc. R. Co.,* 179 Mich. 388 (146 N. W. 241); *Hipple* v. *Edison Electric Illuminating Co.,* 240 Pa. St. 91 (87 Atl. 297); *Drown* v. *New England Telephone Co.,* 80 Vt. 1 (66 Atl. 801), 81 Vt. 358 (70 Atl. 599); *Wade* v. *Empire Dist. Elec. Co.,* 94 Kan. 462 (147 Pac. 63, 98 Kan. 366, 158 Pac. 28).

Mr. Justice LAMAR, in *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 417 (36 L. Ed. 485, 12 Sup. Ct. 679, 682, 683, see, also, Rose's U. S. Notes), said:

"What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and sur-

roundings of each particular case and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent, men under a similar state of affairs. * * It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

In the case of *Greenwood* v. *Eastern Oregon Power Co., supra,* the evidence showed that the plaintiff, in moving his hay derrick, which was of the same construction and height as were other derricks in common use in Union County, and the mast of which reached the height of twenty-nine feet and four inches above the surface of the road, undertook to drive under the power lines of the defendant company. The electric wires were placed so low that the top of the derrick came in contact with a live uninsulated wire, causing Greenwood to receive an electric shock. On a prior occasion he had, without injury, driven under the wires with another derrick which he supposed was about the height of the derrick he was transporting at the time of the injury. In that case, the court said:

"Plaintiff saw the wires, and, no doubt, knew the danger which might ensue in case the pole of his derrick should come in contact with them; but it was for the jury to say, in view of all the evidence, whether, under all the circumstances, a reasonably prudent and careful man would have been justified in assuming that the defendant had placed its wires at such a height or so insulated them that they would not be a source of danger.

"The question of contributory negligence is rarely a question of law for the court, but usually a question of fact for the jury. It is only where the facts are undisputed and only one inference can be drawn from the testimony that the question is for the court.

When there is a conflict of evidence, or even when the facts are undisputed but different inferences may be drawn therefrom, it is a question of fact for the jury (citations).''

A farmer by the name of Lyon testified, on behalf of the plaintiff, that in July, 1919, he resided on the East McCully place, and that he had constructed the hay derrick that Saylor was moving at the time of the accident involved herein. He gave a general description of the derrick and testified that it was nineteen feet and six inches in height. He further testified that he had had a conversation with Carl Saylor with reference to moving the derrick; that he (Lyon) had taken the derrick through the McCully gate under the wires three times without accident, and that he had instructed Saylor how to proceed to get the derrick through that gateway.

"Q. Where was the hay derrick?

"A. It was out in the field.

"Q. On the McCully ranch east of Joseph?

"A. Yes.

"Q. Well, how had you got that hay derrick from the McCully ranch north of Joseph when you moved it to the McCully ranch east of Joseph?

"A. I moved it over there with a team. * *

"Q. And where did you take it into the field of the McCully ranch?

"A. At the gate. * *

"Q. What did Mr. Saylor want to do with the hay derrick?

"A. He wanted to use it to stack his hay. * *

"Q. * * Did you tell him he could take it out at the gate?

"A. I told him the way I had brought it in, yes.

"Q. How many times had you taken that hay derrick out that gate?

"A. Through there three times.

"Q. Before this?

"A. Yes. * *

"Q. You told him how to take it out of there?

"A. Yes.

"Q. Now, did you say anything to him about being careful so as not to pull the wires off the pole, that were suspended over the gateway?

"A. Yes.

"Q. What did you tell him to do?

"A. I told him how that the wires caught in the derrick and that he should have a strip of board long enough to reach those wires to help them over the derrick with."

Cross-examination by Mr. Cooley:

"Q. Did you tell him they were electric wires?

"A. I don't remember whether I did or not. * *

"Q. Why use a board?

"A. Well, it was the only thing I knew of that would help them over."

Tom Bales, called by plaintiff, testified that he was employed by Carl Saylor to furnish his team and help move the hay derrick from the East McCully ranch to the North McCully ranch. He testified that the derrick was moved by sliding it on the ground, two teams being hitched to the corner of the derrick with chains, and the doubletrees being fastened to the chains. Bales drove one team, Carl Saylor the other. Witness stated that in driving the teams, he and Saylor stood on the derrick. As they approached the gateway leading into the road, they stopped and opened the gate.

"We drove through the gate, I suppose tried to drive through it * * . Mr. Lyon's little daughter was over in the yard and she holloed and told us that the wire had caught on the derrick, so we stopped. * * I was on the derrick. * * He was on the derrick also * * . We stopped our teams and we hunted for a pole to push this wire back with * * . Well, then we got a pole to fix it, * * and he used the pole himself

* * .  He got the pole and put it on the electric wire and pushed it back over this upright piece under the guy wire * * .  We went and started our teams again * * .  We pulled a little ways, not very far, and saw it was tightening on the pole and the pole wasn't level * * .  I was standing on the ground and I stepped over this chain and I had on a pair of cloth gloves and I taken hold of this little baling wire sticking out, with my fingers, like this, and when I went to unwind it, then I got a little shock in the fingers, you see, but still it wasn't very much.  I felt just a tingle in my fingers is all, and it just struck me that I had taken a cramp into the fingers and I tried it again and the next time I tried it it shocked me to my elbows, and then I knew there was. something wrong, and I told him * * that the chain was electrified, and he just stepped over * * , and I says, 'If you don't believe it you just take hold of it just like that * * .'  He just reached over with one hand. He had his gloves on and he took his gloves off and took hold of the wire and he says, 'Yes.'  Well, I made the proposal to take that pole, pull the end of the pole down so we could get this chain out of the eye-bolt, and we had two ropes tied to the pole, out to the braces, to keep the pole from swinging each way when we were dragging it along to hold it steady, so I taken one of those ropes myself.

"Q. It was tied to what?

"A. Tied to the brace going to the mast; and then I taken and untied this rope, you see, and we wrapped it around this piece to pull the pole down. We brought this rope around once, and I taken hold of the rope, and he did also, and we pulled this down. * * We taken the chain loose from the crosspiece down here, and he hooked it just as low down as he could so it would go around.  He says, 'I will put it around the pole, because it is a nonconductor.'  This guy rope was going from the eye-bolt that goes through the end of the pole I spoke of.  It was fastened on top of the pole. * * Well, that lifted it, you see, from the pole as it came up, getting higher,

lifted away from the pole until he could slip the end of the chain through here over the pole and get pretty close to the end of the pole also. Well, as he did that, as he went to put it over, I says, 'Mr. Saylor, be careful. Don't touch that guy rod. If you do you will get electrocuted.'

"Q. What did he do there?

"A. Well, he was very careful. He got back far enough so he wouldn't touch this and the hook dropped underneath the pole, and he brought it around and hooked it around the chain, and then— * * he stepped back toward the frame of the derrick. The derrick was sitting in a due North and South position, and he went back to the South end of the derrick. I was fixing the rope, tying the rope back on there, and when I got that done I just stepped out of the frame of the derrick around on the West side of the derrick and was walking back toward the back of the derrick with my head down. It was warm. I was very warm, and I had my head down and stepped back there and just as I got * * even with the mast * * Mr. Saylor spoke to me. He says, 'Push me loose.' * *

"Q. Where was Mr. Saylor at that time he said to you, 'Push me loose'?

"A. He was standing on the south end of the derrick, at about the corner of it. I couldn't tell you whether his feet were on the derrick or on the ground, because he spoke to me, 'Push me loose,' and when I raised my eyes up and saw him I saw that he was caught, and there was a pole that he had been using there, laying right across the derrick * * . I just grabbed that pole up in my hands.

"Q. Where was his arms? * *

"A. They were around the brace, hugging around the brace just like this * * .

"Q. How did he get off that brace?

"A. He swung right around under the brace and fell with his head back on the south end of the derrick. * * He fell on the ground."

The defendant averred facts constituting a complete defense to this action, but allegations without evidence can avail nothing. For example, it averred that Carl Saylor, "at the time of attempting to move said hay derrick, and prior thereto, well knew that said wires were carrying a high current or voltage of electricity." It may be true that Saylor knew that the lines carried electricity, but any such finding would have to be based upon a guess. However, after Saylor drove into the place of danger, he did learn of the presence of electricity in the defendant's wires, and that there was also electricity in the guy wire of the derrick after the contact.

Again, it is averred that the beam of the hay derrick "could have been, and should have been, placed in such position that said wires would not come in contact with said beam in moving said hay derrick under said wires." There is no evidence of record in support of that allegation. The testimony shows that when Lyon transported the derrick through the gateway, he elevated the wires of the electric company with a board. He constructed the derrick and, no doubt, knew how the beam should be placed and carried.

The decedent was an intelligent man, but, from the evidence, knew little about electricity.

There is testimony in the record that the defendant's wires were strung and fastened on poles set 300 feet apart, at a height of about twenty-three feet from the ground, but that they were allowed to sag until they were only about seventeen feet above the gateway leading from the highway to the McCully ranch. The gateway, we have seen, was the means of ingress and egress to and from the farm.

7. Uninsulated wires, conveying a dangerous current of electricity along a public highway, and obstructing rightful travel upon such highway, constitute a nuisance: Joyce on Nuisances, § 258.

From the record, it appears that Saylor knew of the presence of the transmission wires. However, we cannot say, from the record, that Saylor did know that the wires carried a dangerous, or any, current of electricity. But when he drove into the nuisance maintained by defendant upon the public highway, he must have learned that the wires were charged with electricity and that some metal parts of the derrick were likewise charged. He evidently knew that the guy wire was "electrified." He was there, with the derrick in contact with the electric wire. It is asserted that he was negligent in remaining about the derrick after the contact. What was he to do? He had no information that the wires would have been killed at his request. Bales' testimony is too long to print in full, but he tells us that Saylor remained on and about the derrick and attempted to extricate it; that Saylor was very careful; that he said:

"Mr. Saylor, be careful. Don't touch that guy rod. If you do you will get electrocuted."

He testified further:

"He [Saylor] was very careful."

The record shows that Saylor knew that wood was a nonconductor of electricity, and that he used a pole or a board in touching the metal parts. When he was killed he was evidently using his best judgment in an attempt to get the derrick and teams out of a dangerous situation. His judgment proved faulty.

It is charged and admitted that Saylor was killed by the shock of a current of electricity from the de-

fendant's transmission lines.  But how his body happened to come into contact with the electric current that killed him, we are not told.

"To constitute contributory negligence, the act or omission of the person injured must be one which he could reasonably anticipate would result in his injury."  29 Cyc., p. 520, subd. c.

To like effect, see 9 R. C. L., Electricity, § 14.

Again: "While knowledge of danger does not, as a matter of law, defeat a recovery for an injury received, yet in all cases it is an important factor for the consideration of the jury, and, in many, the character of the knowledge and the nature of the danger may be such as to constitute contributory negligence. * * If, by the exercise of care proportionate to the danger, one might reasonably expect to avoid the danger, or if reasonably prudent men might differ as to the propriety of encountering it, * * a recovery is not barred."  29 Cyc. 518, 519.

Error was not committed by the court in overruling the motions for nonsuit and for directed verdict.

We have examined all alleged errors, but find no substantial reason for reversing this case.

8, 9. The court rightfully sustained the plaintiff's motion to strike from the answer the matter referred to in our statement.  The testimony of Stanley relating to the height of the wire on the east and on the west of the McCully gateway was competent, especially in view of the testimony of Scott relating to the sag of the wire at the gate.  The objections to the court's instructions are largely technical.  The jury was charged fully and fairly.

The one important question in this case relates to the matter of contributory negligence on the part of Saylor.  It is a close question.  But in view of the

former holdings of this court, we believe that the trial court rightfully submitted that question to the jury.

This case is affirmed.                    AFFIRMED.

BURNETT, J., not sitting.

Mr. Justice COSHOW, having been appointed since the hearing of this case, took no part in the decision.

---

Rehearing denied February 26, 1924.

ON PETITION FOR REHEARING.

(223 Pac. 725.)

For the motion, *Mr. A. S. Cooley.*

*Contra, Mr. Daniel Boyd.*

In Banc.

The defendant, in its petition for rehearing, asserts that this court erred in holding that the question of contributory negligence was a question for the jury, and in refusing to hold that the plaintiff's decedent, Carl Saylor, was guilty of contributory negligence as a matter of law.

For a full statement of the facts in this case and the former decisions of this court involving like questions, see opinion filed January 22, 1924.

The defendant, Enterprise Electric Company, maintained a line, whereby it was transmitting electric currents of a dangerous voltage, through its wires suspended on poles placed along the county road at intervals of about 300 feet, and it had allowed its wires to sag over a gateway opening into the county

road from the farm from which Saylor was attempting to move the derrick on the day he was killed.

The decedent, a farmer, was engaged in harvesting his crop of hay. On the day of his injury he was moving from one farm to another a hay derrick of the dimensions commonly used by farmers in that locality, and, in doing so, was required to pass through the gateway referred to. Previous to the accident, this same hay derrick had been transported through the gateway upon a number of occasions, and Saylor had been instructed how to take it through.

The defendant discusses this case, in his brief, upon the theory that plaintiff's decedent voluntarily placed himself in a place of danger, and that at the time he drove the hay derrick in to the gateway leading to the public road he knew that the electric lines were carrying a dangerous voltage of electricity.

It is true that after the electric line came in contact with the derrick, Saylor learned that the lines were carrying a current of electricity. But the testimony does not show that he was informed, or knew, prior to his attempt to extricate the hay derrick from the transmission wires, that electricity was being transmitted over those lines. Tom Bales testified of his words of precaution to Saylor and swore that Saylor "was very careful."

10. It is familiar law in Oregon that in ruling upon a defendant's motion for nonsuit, all competent evidence in the record is entitled to be considered by the court in the light most favorable to the plaintiff; and every reasonable intendment, and every fair and legitimate inference, which can arise from the evidence, must be made in favor of the plaintiff: *Roberts* v. *Cohen*, 104 Or. 177 (206 Pac. 295); *Farrin* v. *State*

*Industrial Acc. Com.,* 104 Or. 452 (205 Pac. 984), and the local citations there given.

"A motion for nonsuit is a demurrer to the evidence and admits the truth of the evidence, and every reasonable inference of fact which the jury may infer from it, and if different conclusions can be drawn from the facts the case should be left with the jury." *Herrick* v. *Barzee,* 96 Or. 357, 371 (190 Pac. 141).

To like effect is *Watts* v. *Spokane, Portland & Seattle Ry. Co.,* 88 Or. 192, 196 (171 Pac. 901).

Again: "And to justify granting a nonsuit, facts should be not only undisputed, but conclusions to be drawn from them indisputable. If different minds may honestly draw different conclusions from the facts, though undisputed, the case should be left to the jury. *Peabody* v. *Oregon R. & N. Co.,* 21 Or. 121 (26 Pac. 1053, 12 L. R. A. 823)." *Jackson* v. *Sumpter Valley Ry. Co.,* 50 Or. 455 (93 Pac. 356).

And again we have:

"Where men of reasonable minds might draw different conclusions from the evidence, the case is for the jury; and this is so, although the evidence is uncontradicted. When facts proved without dispute require the exercise of reason and judgment, so that one reasonable mind may infer that a controlling fact exists, and another, that it does not exist, there is a question of fact." 38 Cyc. 1539, 1540.

To similar effect, see *Piper* v. *Green,* 216 Ill. App. 590; *Bank* v. *Colthurst,* 195 Iowa, 1032 (188 N. W. 844, 191 N. W. 787); *Montecalvo* v. *Wahl* (N. J.), 117 Atl. 621; *Shaughnessy* v. *Director-General,* 274 Pa. 413 (118 Atl. 390, 23 A. L. R. 1211); *Partridge* v. *Cole,* 96 Vt. 281 (119 Atl. 398); *Western Union Tel. Co., Inc.,* v. *Hall,* 287 Fed. 297.

In *Klein* v. *City of Portland,* 106 Or. 686 (213 Pac. 147, 150), Mr. Chief Justice McBRIDE wrote:

"Contributory negligence is a question of fact, unless no other conclusion can be drawn from the evidence."

In *Strang* v. *Oregon-Washington R. R. & N. Co.*, 83 Or. 644 (163 Pac. 1181), the railroad company defended upon the ground that the plaintiff was guilty of contributory negligence. Mr. Justice Burnett said:

"The standard by which diligence or negligence is to be judged is the conduct of a reasonably prudent man under the conditions disclosed by the evidence, and the court is not justified in directing a nonsuit unless no reasonable conclusion can be drawn from the evidence except that the plaintiff was remiss in his duty under the circumstances. Ordinarily and almost uniformly this is a question of fact for the jury. * * It was for the jury to determine whether Strang acted as a reasonably prudent man would in such a juncture."

11. Whether a person acted as a reasonably prudent man in his situation and with his knowledge, under like circumstances, would have acted, must be determined by the trial jury, unless the testimony is so plain against him that reasonable men could arrive at no other conclusion than that he was negligent.

In *Bush* v. *Wood Lbr. Co.* (Cal. App.), 218 Pac. 618, the court said:

"In order to sustain the contention of appellant, it must be held that the conclusion of the jury cannot be supported on any hypothesis whatever. * * 'If the finding of fact is based upon a reasonable inference, it is not within the power of this court to set it aside.' *Ryder* v. *Bamberger*, 172 Cal. 791, 799 (158 Pac. 753, 756)."

Considering all the pertinent evidence in the case at bar, it appears to us that reasonable men

might differ as to the inferences which might be drawn therefrom, and therefore it cannot be properly declared that no reasonable man would find in favor of the plaintiff. Moreover, ten of the twelve jurors signed a verdict in favor of plaintiff, and this further substantiates our statement that different minds might reasonably arrive at different conclusions from the facts adduced at the trial.

The acts required for preservation of the safety of a person in a dangerous situation are dependent upon the circumstances of the case: *Ruenzi* v. *Payne,* 208 Mo. App. 113 (231 S. W. 294); 20 R. C. L., p. 112, § 98.

12. Mere knowledge upon the part of Saylor of the offending instrumentality does not constitute contributory negligence: 20 R. C. L., pp. 110, 111 and notes, § 97; *Neilson* v. *Missoula Creamery Co.,* 59 Mont. 270 (196 Pac. 357).

In discussing what is proper exercise of care, the editors of Ruling Case Law say:

"In the last analysis, it will be found that knowledge of the peril is a basic element of duty, from which it may be concluded that the care which must be exercised in any particular case is proportioned to the actor's knowledge, actual or imputed, of the danger flowing from the act performed. * * Where a danger actually is foreseen, the duty is imposed to adopt every possible precaution to avoid an injury therefrom.

"The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs." 20 R. C. L., pp. 25, 26.

Again, as to liability:

"It is said that when the defense of contributory negligence is urged as ground for a nonsuit, 'it must appear that reasonable men, acting as the triers of fact, would find, without any reasonable probability of differing in their views, either that the plaintiff knew and appreciated the danger, or that ordinarily prudent men under the same circumstances would readily acquire such knowledge and appreciation.' " 20 R. C. L., pp. 108, 109, § 94.

The inclosed quotation was approved in *Gentzkow* v. *Portland R. Co.*, 54 Or. 114 (102 Pac. 614, 135 Am. St. Rep. 821).

The same editors have written that—

"When, however, the specific evidence submitted only goes to the extent of establishing knowledge of the defect, the question of his contributory negligence should not be withdrawn from the jury. Indeed, it can only be in rare cases, if ever, that the question becomes one of law. In other words, it is for the jury to determine whether knowledge of the physical characteristics of the offending instrumentality constituted a sufficient warning of peril to the plaintiff." 20 R. C. L. 111.

The petition is denied.        REHEARING DENIED.