Argued February 16, affirmed March 6, 1917.

## SUMMERFIELD *v.* SOUTHERN PAC. CO.*

(163 Pac. 420.)

**Railroads—Injury to Person on Track—Question for Jury—Trespassing.**

1. Whether deceased was a trespasser upon a railway trestle should be submitted to jury where that question is doubtful.

**Railroads—Injuries to Persons on Track—Licensees or Trespassers.**

2. A pedestrian, who, in place of taking a good road less than 200 feet away in going from one city to another in the night-time, goes over a main line railway trestle 794 feet long and 40 feet high, with

---

*Authorities discussing the question of duty of railroad company to keep lookout for trespassers on track are gathered in notes in 25 L. R. A. 287; 8 L. R. A. (N. S.) 1069.    REPORTER.

no space on either side for escape, the trestle not being used by public generally in night-time, there being posted notices forbidding such use and nothing showing acquiescence by railway company, is a trespasser, and not a licensee.

**Railroads—Injuries to Persons on Track—Negligence.**

3. A pedestrian who, in the night-time, in preference to going over a well-traveled road less than 200 feet away, goes over a high, long, and narrow main line railway trestle, from which it is impossible to escape in case of the approach of a train, is negligent.

[As to the duties of railroad company to trespassers on track, see note in 30 **Am. St. Rep.** 53.]

**Railroads—Injuries to Persons on Track—Prima Facie Trespassers.**

4. Any person walking upon a railway trestle, in a rural community, contrary to posted notices, is *prima facie* a trespasser, and this presumption can be overcome only by proof that company had notice of such use and affirmatively acquiesced therein.

From Clackamas: JAMES U. CAMPBELL, Judge.

This is an action by Edward Summerfield, administrator, against the Southern Pacific Company, a corporation. Judgment for defendant and plaintiff appeals.

Department 2. Statement by MR. CHIEF JUSTICE McBRIDE.

This is an action for damages for the death of Alma Summerfield, who was killed by a Southern Pacific train on the night of January 7, 1914, while attempting, in the company of two other persons, to walk the bridge or trestle of the Southern Pacific Company which spans the Molalla River between the towns of Canby and Barlow, in Clackamas County.          AFFIRMED.

For appellant there was a brief over the names of *Mr. O. D. Eby, Mr. Malcolm H. Clark* and *Mr. Alfred E. Clark,* with oral arguments by *Mr. Eby* and *Mr. Malcolm H. Clark.*

For respondent there was a brief over the names of *Mr. Ben C. Dey, Mr. William D. Lawton, Mr. Ralph*

*E. Moody, Mr. George C. Brownell, Mr. Gordon E. Hayes,* and *Mr. John F. Reilly,* with an oral argument by *Mr. Dey.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

The whole controversy in this case centers upon the following instruction given by the court:

"I instruct you, as a matter of law in this particular case, that the injured party, Alma Summerfield, at the time of the accident was a trespasser upon the property of the railroad company, the defendant in this case. Now the law compels a railroad company, or anybody else, to use a certain amount of diligence even toward trespassers, and duties that they are required to use is that they shall not willfully or wantonly injure anybody, even a trespasser. To illustrate: Suppose when you go home in your machine this evening, Mr. Risley [addressing one of the jurymen], there is some man crossing your road, and you see that man and he has no business there even, but you have no right to run over him with your machine and injure him. It is your duty, if you know the trespasser is in a dangerous place, to use ordinary care to avoid injuring him, and you must use that ordinary care to avoid injuring even a trespasser. And that is the duty the railroad company owed the injured party in this case, and it is for you to determine, under all the circumstances, whether they discharged that duty."

The court further instructed the jury:

"It is for you to determine, under all the circumstances of this case, whether the engineer saw the parties upon the trestle or bridge in sufficient time that with the use of ordinary care he could have avoided injuring them. If he could have, then the railroad company is liable. If he used his best endeavors, after he did see them and found out that they were upon the track, to stop the train, and notwithstanding that they were injured, then the railroad company is not liable."

Plaintiff requested the court to give the following instruction, among others, to the jury:

"You are instructed that if you find from the evidence that for years the public were accustomed to use the track and trestle of the defendant railway company, with the knowledge and acquiescence of the defendant company even though without its express consent or license, its assent and license so to do will be presumed, and in that case persons so using said track and trestle are not in a strict sense trespassers, but were licensees, and the defendant was bound to take reasonable precaution to avoid injuring such persons."

Other instructions of a similar tenor distinguishing between licensees and trespassers were requested and refused.

1, 2. This controversy then presents but one question. If the deceased, as a matter of law under the facts disclosed by plaintiff's testimony, was a trespasser upon the track, the plaintiff should not recover. If there was such a condition of the testimony that this fact was left in doubt, the instruction of the court was wrong, and the case should be reversed.

To determine this we shall have to consider the circumstances as disclosed by the testimony: The evidence shows that the town of Canby is situated about a mile north of the trestle in question, and the town of Barlow, about one half a mile south; that the trestle which spans the Molalla River is 797 feet long, 40 feet high, and barely wide enough for the passage of trains, leaving no room on either side of the track whereby a pedestrian could escape in case a train should pass while he was on the track. The town of Canby contains from 500 to 700 inhabitants and the town of Barlow from 25 to 75 inhabitants. There is a county road running parallel with the railroad track, and from 100 to 200 feet distant therefrom between the two villages,

and across the Molalla upon this county road, is a covered bridge. The evidence tends to show that prior to the construction of this bridge in 1906 the railroad trestle was frequently used by pedestrians in going from one village to another, but that since the construction of said bridge such use of the trestle has not been so frequent; a majority of the travel since then being across the county bridge. There is the usual path alongside the railroad track which goes as far as the railroad bridge, then turns down to the county bridge, and after crossing the said bridge it returns again alongside of the railroad track. Upon the evening in question the deceased, who was about seventeen years old, in company with her sister and a young man, had started from Barlow on their way to Canby. They had been about an hour on the road when they came upon this bridge, and as they neared the southern end of it were overtaken by the train and Alma Summerfield and the young man were killed. The evidence indicates that as soon as the presence of the party was discovered by the engineer he put on the emergency brakes and did all he could to stop the train, and there is no evidence of any reckless or wanton injury in the case, but that the train was going at about its usual speed of forty miles an hour. It was also shown that at each end of this trestle signs were placed forbidding trespass upon the trestle, and that these were in a position where they could be seen in daylight by persons going upon the track. The accident happened about 7:30 o'clock in the evening, and when it was fully dark.

3. It goes without saying that a railroad company has the right to the exclusive use of its property unless the public has acquired some interest therein either by license, express or implied, or by such adverse use as amounts to a prescription. That any person could go upon the trestle under the conditions shown evinces an

entire lack of caution and regard for personal safety
which seems remarkable. The narrowness of the
trestle, the impossibility of getting off of it on either
side, except by a jump of forty feet into the river, its
great length, the fact that it was situated upon the main
line of the railroad leading from Portland to Cali-
fornia, all were warnings which it would seem no
prudent person would disregard; and at the very out-
set we are impressed with the fact that the preliminary
cause of this accident was the negligence of the plain-
tiff's intestate in choosing to risk her life upon the
trestle rather than to take a safe and fairly convenient
route by way of the county road and bridge. We think
under the circumstances detailed that persons going
upon the track were trespassers.

Practically the sole reliance of plaintiff for any con-
trary doctrine is the case of *Doyle* v. *Portland Rail-
way Light & Power Co.,* 71 Or. 576 (143 Pac. 623),
in which we held that under the peculiar circumstances
of that case the testimony on that subject should have
been submitted to the jury, and the question as to
whether or not the injured person in that case was a
trespasser should have been left to it. We think the
opinion in that case goes quite as far as the law war-
rants, and that it should not be further extended.
But that was very different from the case at bar.
The situation in that case is well set forth in the brief
filed by counsel for the plaintiff which we find with
the transcript. Among other things it is said:

"The uncontradicted evidence of the witnesses was
that the people who lived in the vicinity of Berkley
and who worked at Sellwood (both stations being
within the city limits of Portland and suburbs and
additions thereof) used the trestle in question as a
footway or passageway in going to and from their
work. Also that school children and the people gen-
erally residing or living or working in the vicinity of

Johnson Creek so used such trestle for a period extending as far back as four years to and embracing the day on which the plaintiff was hurt. The testimony further shows that on some occasions the trains of the defendant stopped on the trestle to keep from striking people who were thereon. The witness McLaughlin testified positively to this fact. It is alleged in the complaint and shown by the evidence that this trestle *was a way of necessity* and constituted and was the *only means of passageway* which the people in the vicinity had without going an unreasonable distance around in another direction, and that even then it was necessary for them to cross private lands in order to get to their place of work, or to return therefrom to their homes, if they did not use this trestle. Under these facts, which are undisputed, and which show a way of necessity in common use for years, persons using such trestle were not trespassers, but were licensees."

The evidence in the case at bar does not indicate any such state of facts. It does not show any necessity for the use, but indicates only that it was a little more convenient to cross by the trestle than to go by the way of the bridge. The testimony in the Doyle case also establishes the fact that the railroad company was aware of the frequent use of this trestle by the public, and was in the habit of stopping its trains to allow persons on the trestle, which was a comparatively short one, being only 156 feet long, to escape therefrom, while in this case there is no testimony that the company had ever perceived anybody upon its trestle, or that the public generally had made a practice of using it in the night-time when the presence of persons upon it would be difficult of detection. In fact, the testimony rather indicates that the majority of the public took the county road at this point, and that since the building of the bridge

83 Or.—15

comparatively few persons took the risks of crossing on the trestle. We see nothing in the evidence in this case to indicate that the plaintiff was a licensee, or that the defendant had by any act acquiesced in the use of this trestle by the public as a pathway. Another distinction is made in the Doyle case as to travel upon tracks and trestles in the limits of cities. As will be seen from the excerpt from the brief it was especially urged that the accident in that case took place in the suburbs of the city of Portland. Other cases, such as *Teakle* v. *San Pedro etc. R. Co.*, 32 Utah, 276 (90 Pac. 402, 10 L. R. A. (N. S.) 486), are of accidents occurring in railway yards within the limits of populous communities where the public travel is very great. This was in a rural community with county roads leading from one small village to another, and there was no such congestion of travel as might lead the railway company to apprehend that persons would use this trestle. We do not see any circumstances in this case which indicate that the defendant ever acquiesced in the use of this trestle for a pathway. In this state there is no law that punishes criminally a trespass upon a railroad track. The railroad company can do only one of two things: Either post notices, as in the case at bar, or put a guard with a club at each end of every trestle between Portland and Ashland; or, as a third alternative, submit to persons walking across the trestle if such persons are minded to take the risks incident to such course. To say that when it has posted notices forbidding people to trespass upon the trestles, has done no act to encourage such travel, and provided no conveniences by which persons are induced to enter upon such trestles, it has acquiesced in such use or given any license to such persons thus to privilege themselves is absurd upon the face of it; and such we

think is the holding of the majority of the courts: *Louisville & N. R. Co.* v. *Davis*, 162 Ky. 572 (172 S. W. 966); *Lamb* v. *Southern Ry. Co.*, 86 S. C. 106 (67 S. E. 958, 138 Am. St. Rep. 1030); *Sublett's Admr.* v. *Cincinnati & G. R. Co.*, 146 Ky. 530 (142 S. W. 1060); *Long* v. *Pacific Ry. & Nav. Co.*, 74 Or. 502 (144 Pac. 462, 145 Pac. 1068, L. R. A. 1915F, 1150); *Curd's Admr.* v. *Cincinnati etc. R. Co.*, 163 Ky. 104 (173 S. W. 335, Ann. Cas. 1916E, 614); *Louisville etc. Co.* v. *Woolfork*, 30 Ky. Law Rep. 369 (99 S. W. 294); *Frye* v. *St. Louis I. M. & S. R. Co.*, 200 Mo. 377 (98 S. W. 566).

4. Any person walking upon a railroad trestle where such use of it is forbidden by notices, such as are posted here, is *prima facie* a trespasser, and this presumption can be overcome only by showing such a state of circumstances as indicates that the railroad company had notice of such use and affirmatively acquiesced therein. In this view of the case the instruction given was correct, as it is not contended seriously that if the deceased was a trespasser upon the track the instruction was wrong. There is here an entire lack of any evidence to show acquiescence or license by the defendant to the public or any other person to use its trestle as a pathway. On the contrary, the evidence indicates that it objected in the only practical way that it could object to such use, and that there was no necessity for the deceased to have used it in preference to the safe way provided by the county.

Having reached this conclusion other questions presented by counsel become immaterial; and the judgment of the Circuit Court will be affirmed.

AFFIRMED.

MR. JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE MCCAMANT concur.