Argued October 7, reversed December 20, 1927, rehearing denied
February 28, 1928.

# CHARLES M. MORSER *v.* SOUTHERN PACIFIC COMPANY ET AL.

### (262 Pac. 252.)

**Appeal and Error—Evidence, With Every Reasonable Intendment, must be Viewed Most Favorably to Respondent in Determining Whether Cause was Properly Submitted to Jury.**

1. In determining, on defendants' appeal, whether cause should have been submitted to jury, evidence, with every reasonable intendment, must be viewed in light most favorable to plaintiff.

**Negligence—Contributory Negligence is for Jury, Where Fair-minded Persons Might Differ.**

2. If facts present a case where fair-minded persons might differ in conclusions as to whether plaintiff failed to exercise due care to avoid injury, Supreme Court cannot say, as matter of law, that he was contributorily negligent.

**Negligence—One must Exercise Care of Ordinarily Prudent Person Under Circumstances to be Free from Contributory Negligence.**

3. In determining whether plaintiff was guilty of contributory negligence, his conduct must be measured by degree of care which ordinarily prudent person would have exercised under same circumstances.

**Appeal and Error—Supreme Court cannot Substitute Its Judgment for Jury's on Fact Questions, but may Reject Evidence Utterly Unreasonable and Contrary to Human Experience (Const., Art. VII, § 3c).**

4. While it is not the province of the Supreme Court to substitute its judgment for that of jury on questions of fact, Constitution, Article VII, Section 3c, does not deprive it of its judicial function to reject evidence which is utterly unreasonable and contrary to all human experience.

---

1. See 20 R. C. L. 169.
2. Contributory negligence as question for jury, see note in 8 Am. St. Rep. 849.
3. See 20 R. C. L. 26, 170.
4. Exceptions to rule as to functions of court and jury in negligence case, see note in 15 L. R. A. 332. See, also, 20 R. C. L. 167. Right to peremptory instruction in regard to contributory negligence, see note in 35 L. R. A. (N. S.) 1214.

Railroads—Pedestrian Held Negligent Though Testifying That He Looked When Seven Feet from Track, but Did not See Electric Train With Standard Headlight.

5. Pedestrian, struck by electric train with standard headlight, which was seen by his wife 180 feet away, notwithstanding heavy fog, *held* contributorily negligent, as matter of law, though he testified that he looked and listened for train when about seven feet from track, but neither saw nor heard it until it was forty or fifty feet away; the physical facts conclusively refuting latter statement.

Railroads—Duty to Look and Listen Includes Obligation to See and Hear Any Train Which Vigilant Attention will Permit.

6. Absolute duty of person to look and listen before attempting to cross railway track extends to vigilant attention in all directions from which a train may come, and includes obligation to see and hear any train which such attention will enable him to, in view of danger.

Railroads—Pedestrian's Declaration That He Looked and Listened, but Failed to Perceive Train in Plain Sight and Hearing, Raises No Question for Jury.

7. Plaintiff's declaration that he looked and listened, before attempting to cross railway track, and yet failed to perceive approaching train in plain sight and hearing, does not raise a fact question for jury, in action for injuries sustained, particularly in case of pedestrian.

Railroads—Dense Fog Requires Higher Degree of Care to Observe Train.

8. Prevalence of dense fog requires exercise of higher degree of care by pedestrian to observe approaching train before attempting to cross railway track.

---

Appeal and Error, 4 C. J., p. 650, n. 37, p. 765, n. 85, p. 850, n. 50, p. 855, n. 82, p. 857, n. 92, 99, 1 New.

Negligence, 29 Cyc., p. 512, n. 85, p. 631, n. 53.

Railroads, 33 Cyc., p. 767, n. 61, 64, p. 768, n. 68, p. 769, n. 70, p. 981, n. 81, p. 985, n. 1, p. 1024, n. 17, p. 1038, n. 4, p. 1116, n. 90, p. 1117, n. 92.

5. Withdrawal from consideration of jury of unreasonable testimony as to looking and listening for approaching train, see notes in 15 Ann. Cas. 1192; Ann. Cas. 1917B, 477. See, also, 22 R. C. L. 1057. Failure to stop, look and listen at point where it would be effective to avoid danger, see note in 41 A. L. R. 415. See, also, 20 R. C. L. 113; 22 R. C. L. 1031.

6. Duty of traveler on highways to use his senses of sight, hearing, etc., to avoid dangers at railroad crossings, see note in 99 Am. Dec. 780. See, also, 22 R. C. L. 1028.

8. Negligence in proceeding across railroad crossing in fog, see note in 19 A. L. R. 872.

Railroads—Degree of Care in Crossing Railway Track Should be Commensurate With Danger.

9. The degree of care exercised by one attempting to cross a railway track should be commensurate with the danger involved.

From Multnomah: GEORGE TAZWELL, Judge.

Department 2.

REVERSED. REHEARING DENIED.

For appellants there was a brief over the name of *Mr. Ben C. Dey,* with an oral argument by *Mr. Roscoe C. Nelson.*

For respondent there was a brief over the name of *Messrs. Davis & Farrell,* with oral arguments by *Mr. Eugene K. Oppenheimer* and *Mr. Paul R. Harris.*

BELT, J.—Plaintiff seeks to recover damages for injuries sustained by reason of having been struck by a south-bound electric train running between Portland and Oswego, operated by the defendant company. This cause was here on a former appeal (110 Or. 9, 222 Pac. 736) and the judgment was reversed for the reason that plaintiff was held guilty of contributory negligence, as a matter of law. On retrial, a verdict was again rendered for plaintiff. Hence this appeal.

The accident occurred October 18, 1921, at about 5:40 A. M., in the outskirts of the City of Portland, as plaintiff was crossing the railway track on his way to work. It was dark and foggy. The track at the place in question runs near to and parallel with the Willamette River. Between the track and the river is plaintiff's houseboat where he and his wife had lived for eight years prior to the accident. The right of way was fenced on both sides and, in crossing the track, it was necessary to open the east gate which

was about fourteen feet from the east rail. The houseboat was 165 feet from the track. At time of injury, plaintiff was employed by the Portland Railway, Light & Power Company, as conductor, and, in going to and from his work he crossed this track daily at approximately the same time. He was thoroughly familiar with the premises and knew the schedules upon which the trains were operated. Plaintiff was at this time fifty-seven years of age, in good health and in full possession of his faculties.

We again inquire: Was plaintiff guilty of contributory negligence as a matter of law? On the first trial he thus gave his version of how the accident happened:

"I * * went to the gate, opened it, listened and looked in both directions, heard nothing and went through and closed it. After going part way I looked again to the north and to the south and seen nothing. As I was to step on the track I looked to the north and I saw an object glance before me, it looked like a shadow, but being such a dense fog and at the rate of speed it was traveling I could not judge the distance of how far it could be away from me. I realized it must be a car and hastened to cross the track and as I was leaving the track on the opposite side I was struck by the far side of the car, in the hip. * *

"Q. Now, the distance that the car ran after it hit you, and your observation as a street car man, how fast would you say this car was running? A. Thirty miles, or better. * *

"Q. Well, you don't want to tell the jury you would step on the track, after seeing it, unless you did have some idea how far it was, do you? A. I should judge better than forty or fifty feet. * *

"Q. You knew it would take you a couple of steps to get over that track, didn't you? A. Yes; and I hastened my feet to get across.

"Q. Did it occur to you to step back and stop at that time?  A. I didn't have time to step back.  It was my object to get across. * *

"Q. You thought you could get across?  A. Yes, sir.

"Q. That is why you didn't step back?  A. Yes.

"Q. You thought you could get across, that was your judgment?  A. Yes."

Thus it will be seen that plaintiff thought he could beat .the train across the track, but lost in the race. Under such circumstances, this court on former hearing properly held, without dissent, that plaintiff's negligence precluded recovery.  After the case was reversed and came on for hearing on second trial, we find that plaintiff thus described the accident:

"I * * come * * up to the gate, opened it, listened and looked both ways, saw no train or heard no sound of any train, passed through and closed the gate, went about half way to the track and listened again and saw nothing, and I started on to cross with my right foot about past the rail, stepping over with the left foot, which would bring me nearly in the middle of the track, turned me in that position (illustrating); I glanced and saw a faint shadow of a light, with a shadow coming through it, and I judged from that it was a car; and momentarily, I was dazed; but I hastened across the track as fast as I could to get across and was struck in the hip by the corner of the car as I left the track."

The plaintiff also testified that when he first saw this "faint shadow of a light" the car was forty or fifty feet away and was coming at a speed of "about thirty miles or better."

Does this change in the testimony render inapplicable the law as declared by this court in its former opinion?  What difference does it make, so far as the application of the law is concerned, whether the plain-

tiff first saw the headlight of the train as he was stepping across the east rail of the track or when he was in the middle of the track? If he was negligent, as a matter of law, in the one instance, he would seem to have been in the other.

1–4. In determining whether the cause should have been submitted to a jury, the evidence must be viewed in the light most favorable to plaintiff. It is entitled to every reasonable intendment. If the facts present a case where fair-minded persons might differ in their conclusions as to whether plaintiff failed to exercise due care to avoid injury, then we cannot say, as a matter of law, that he was guilty of contributory negligence. His conduct must be measured by the degree of care which an ordinarily prudent person would have exercised under the same circumstances. If reasonable persons would reach the same conclusion, that plaintiff failed to look or listen for the approaching train, or, having either seen or heard it, resolved to take the risk of beating it across the track, then it would be the duty of the court to declare that he had failed to exercise due care. While it is not the province of this court to substitute its judgment for that of the jury upon questions of fact, it is properly concerned where there is no reasonable basis for a conclusion reached by a jury. It was not the purpose or intent of Article VII, Section 3c, of the Constitution of Oregon, which precludes a court from reexamining a question of fact tried by a jury, to deprive it of its judicial function to reject evidence which is utterly unreasonable and contrary to all human experience.

5–7. We are assuming, in view of the testimony of plaintiff, that no gong or whistle was sounded and that the train was being operated at an excessive

rate of speed. We also accept his contention that there was a dense fog which tended to obscure his vision. It appears, without contradiction, in the evidence that the electric car carried a standard headlight which was burning at the time of the accident. Plaintiff says that when he was about seven feet from the track he looked and listened for a train, but neither saw nor heard one. Is this testimony not utterly preposterous and unreasonable? Would any reasonable person believe that a man in full possession of his faculties could look and listen under such circumstances and not be aware of an approaching train? The physical facts absolutely and conclusively refute the bare statement of plaintiff that he neither saw nor heard the train, assuming that he looked and listened. It is a case of the law of nature taking precedence over the testimony of a witness. As stated in *White* v. *Minneapolis etc. Ry. Co.,* 147 Wis. 141 (133 N. W. 148), cited with approval in *Cathcart* v. *Oregon-Washington R. & N. Co.,* 86 Or. 250 (168 Pac. 308):

"This absolute duty of a person to look and listen before attempting to cross a railway track, extends to a vigilant attention in all directions from which a train, locomotive, or car may come, and includes obligation to see and hear such, if there be any, which such attention, in view of the danger, will enable him to. Therefore, for a person to declare he performed such duty and yet failed to perceive an approaching train or car, in case of there being such in plain sight and hearing, does not raise a question of fact for decision by a jury. Such person must be presumed to either not have performed such duty or to have done so and yet heedlessly submitted himself to the danger, and that is particularly so as regards a person traveling on foot, 'since the danger zone in such case is so narrow and it may be avoided with so little effort.'"

8, 9. It may well be argued, in view of the weather conditions prevailing, that the train was not in "plain" sight, but it is impossible to conceive that such a large object could not have been seen by the plaintiff who says that he looked when seven feet from the track. If the fog was dense, there was all the more reason for the exercise of a higher degree of care. It is fundamental that the degree of care should be commensurate with the danger involved. He knew that the train was due at about the time that it arrived. His wife testified that she saw the headlight at a distance of 180 feet. Yet plaintiff could not see it forty or fifty feet away. As stated in *Olds v. Hines,* in disposing of petition for rehearing, 95 Or. 591 (188 Pac. 716):

"It is utterly unreasonable and contrary to the very facts upon which he relies for recovery, to say that the train was not in sight. Such oral declarations, when compared with the actual, admitted physical happenings present in the case, are nullities and are to be treated as if they had not been uttered."

In some jurisdictions, where visibility was affected by weather conditions, contributory negligence of the plaintiff is generally held to be a matter for the determination of the jury. However, we are not prepared to renounce the law as declared in *Slusher v. Great Southern R. R. Co.,* 107 Or. 587 (213 Pac. 420), *Olds v. Hines, supra,* and in *Cathcart v. Oregon-Washington R. & N. Co., supra.* Reliance is had by respondent on *Kirby v. Southern Pacific Co.,* 108 Or. 290 (216 Pac. 735), but an examination of that case will disclose a peculiar and unusual state of facts whereby, through the negligence of the defendant, plaintiff's attention was diverted from the impending danger. The doctrine of diverting influence was there involved. It is not so here. While the author-

ities are conflicting, our conclusion is in keeping with the very recent case of *Baltimore & Ohio R. Co.* v. *Goodman,* 72 L. Ed. 22 (48 Sup. Ct. Rep. 24), wherein the United States Supreme Court declared:

"When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train not the train stop for him."

As stated by Mr. Justice McBride in *Slusher* v. *Great Southern R. R. Co. supra,* "There is scant reason for a prudent man being run over at a crossing * * where a little patience or slight attention * * would have prevented the accident."

Much space in the briefs is devoted to the question as to whether plaintiff was a bare licensee or a licensee by invitation, but, in view of the conclusion reached that plaintiff is precluded from recovery by his own negligence, it is deemed unnecessary to consider this phase of the case.

It follows that the judgment is reversed and that the action is dismissed.

Reversed and Case Dismissed. Rehearing Denied.

Rand, C. J., and Brown, J., concur.

Bean, J., Dissenting.—This is an action for damages for personal injury. The cause was tried before the court and a jury and a verdict rendered in favor of plaintiff. From a judgment entered thereon defendants appeal. The case was heretofore before this court upon appeal. See 110 Or. 9 (222 Pac. 736).

The gist of the allegations of plaintiffs' complaint, following the assertion that W. F. Schellenburg was at the time of the accident acting as motorman in

charge of defendants' train and the incorporation of the defendant, Southern Pacific Company, is as follows:

Logan and Virginia Streets are public thoroughfares of the City of Portland and come to an end at Macadam Road, and between said streets if the same were extended to intersect the right of way of defendant, Southern Pacific Company, is a right of way or path crossing and intersecting the right of way of the, defendant company; that the path or right of way is greatly frequented by pedestrians who live east of the company's right of way and also for individuals who work along the river east of the company's right of way.

On the eighteenth day of October, 1921, the Southern Pacific Company was operating one of its trains in a southerly direction. W. F. Schellenburg was a motorman on the train and while plaintiff was crossing said intersection the train ran into and struck plaintiff, injuring him.

That at the time of the accident there was an extremely heavy fog in the southern portion of the City of Portland, particularly in close proximity to the Willamette River and along the right of way of defendant Southern Pacific Company, where the accident occurred. The negligence of defendants was alleged as follows:

"(a) That said defendants then and there carelessly and negligently operated said train, in view of the character of the crossing, and the heavy fog then and there existing at said place, at a high and reckless rate of speed, to-wit: 30 miles per hour;

"(b) That said defendants carelessly and negligently failed to sound any warning or alarm in approaching said intersection to warn and advise in-

dividuals crossing said right of way at said intersection;

"(c) That said defendant then and there carelessly and negligently failed to have its train under control."

The complaint describes the injury of plaintiff and demands judgment against defendants for damages.

The answer of defendants, after admitting the corporate character of the company, and the capacity of W. F. Schellenburg as motorman, and the description of the right of way of defendants entering the City of Portland, denies all negligence on the part of defendants and a portion of the other allegations and as an affirmative defense, alleges in effect as follows:

That a short distance south of the station of Fulton, and between Fulton and the Cemetery Station, on the line of the Southern Pacific Company, is a path or lane which crosses the private right of way of the Southern Pacific Company; that at said point there are private property signs conspicuously located and plainly visible to anyone approaching the railroad tracks. That on or about the eighteenth day of October, 1921, at about the hour of 5:45 o'clock in the morning, defendant Southern Pacific Company was operating an electric motor-car in a southerly direction along the line of the railroad toward said private crossing. Defendant W. F. Schellenburg was engineer on said motor-car; that at the time it was dark and the headlight on the motor-car was on; that although it was slightly foggy the lights of the headlight nevertheless penetrated the dark a long distance in front of the motor-car. That the engineer blew the whistle, rang the bell, for the station at Fulton and the motor-car then proceeded toward Cemetery

Station; that when the car was but a short distance from the point from where said lane crossed the Southern Pacific Company's right of way, plaintiff suddenly and unexpectedly came out on the railroad track in front of the car; that the engineer on seeing plaintiff immediately put on the brakes, bringing the car to a stop in the shortest distance possible; but that the distance between plaintiff and the car, at the moment plaintiff stepped on to the track, was so short that the engineer was unable to avoid an accident. The plaintiff was struck by the right front corner of the motor-car. The answer then avers as follows:

"That plaintiff was thoroughly familiar with the existence of said lane crossing, and well knew that trains ran on said track, but he nevertheless approached and went upon said track at the time of the accident hereinbefore mentioned without exercising due care in regard to the danger of being struck by trains, and in a careless, negligent and reckless manner in the following particulars, to-wit: That plaintiff attempted to cross said railroad track without stopping, looking or listening for the approach of cars along same; that plaintiff paid no attention to the blowing of the whistle, and ringing of the bell on the motor car for Fulton station, although the sound of same was within audible distance of plaintiff; that plaintiff totally disregarded the noise of the approaching car; that plaintiff gave no regard to the rays of the headlight on the car, which rays were focused on the lane crossing while the car was yet a considerable distance therefrom."

And then alleges that whatever injuries plaintiff may have sustained were caused solely by the negligence of the plaintiff and were not caused or contributed to by any fault or negligence on the part of defendants. The new matter of the answer is put in issue as to material particulars by the reply.

The plaintiff, who was a witness in his own behalf, testified in part as follows, after describing the place of the accident and stating that he lived in a house-boat at the foot of Virginia Street, about 150 or 160 feet from the company's right of way, that he had lived there about eight years; that he left home about 5:40 in the morning of October 18, 1921, going to work for the Portland Railway Light and Power Company, where he was employed as a conductor. He states in answer to the question:

"Would you tell the jury what kind of a morning it was? A. It was a heavy fog; a very dark fog seemed to be rolling in sheets, as it does now; lays low and rolls through the air, leaving it very hard to see through. Light doesn't show but a very short distance."

As to what occurred on the morning of October 18th, plaintiff testified as follows:

"A. Why, I went out on the float and drew a pail of water for my wife. She had started to wash. The faucet comes up at the side of the float; and I turned around and handed it to the wife at the door, kissed her goodbye, and started up the steps to work, come up through the walk, up to the gate, opened it, listened and looked both ways, saw no train or heard no sound of any train, passed through and closed the gate, went about half-way to the track and listened again and saw nothing, and I started on to cross with my right foot about past the rail, stepping over with the left foot, which would bring me nearly in the middle of the track, turned me in that position (illustrating; I glanced and saw a faint shadow of a light, with a shadow coming through it, and I judged from that it was a car; and momentarily, I was dazed; but I hastened across the track as fast as I could to get across and was struck in the hip by the corner of the car as I left the track; it threw me onto the fence, crushed my shoulder in, crushed my right hip, tore

seven ribs off my backbone,—broke them, and cut my leg off about half-way to the knee.

"Q. Well, Mr. Morser, I will ask you if at any time you heard any sound of the train, whistle, gong or anything else?   A. I never heard a sound or nothing till I heard the sound of air released when the car struck me,—apparently the brake was let off, what I should judge was an air brake.

"Q. Mr. Morser, about what distance would you estimate the car was away from you when you first saw this faint shadow of a light, as you say?   A. I should judge forty or fifty feet; no one can tell exactly, when an object is coming straight to you, the exact distance.

"Q. Mr. Morser, from your experience as a railroad man, as to speed, what would you say as to the rate of speed that car was going?   A. Well, as the car came up to me and passed me, I should judge it was going about thirty miles or better, as near as I could form an idea."

The plaintiff stated, in substance, the land leased by him ran to the right of way.   There was a fence on both sides; that he passed through a small gate which he put in; there was also a larger gate that permitted trucks hauling lumber to pass through.   At that point there were six or eight houses on the river side of the railroad track; that the people who lived there passed through the gate and over a plank-walk laid by plaintiff from the gate to the railroad; there was a plank on the outside of the rail with gravel between about level with the ties, leaving the rails sticking above.   Defendant's Exhibit 1 shows the plank-walk from the gate to the railroad and the two gates and the sign "Private Property—Permission to Pass Revocable at Any Time."

The difference between plaintiff's testimony given upon the first trial and that given upon the second

trial of this case and his excuse therefor, is shown in his cross-examination in the excerpts of the testimony:

"Now, Mr. Morser, when is the first time since this accident that you have come to the conclusion, thinking it over, that your right foot was at the first track, but your left foot had already stepped on the track or between the tracks? A. Well, nearly three years of solitude, you might call it, sitting there, thinking alone by yourself, you have got to realize every phrase that ever passed before you of anything."

Reading on from his former testimony:

" 'As I was to step on the track, I looked to the north and I saw an object.' * * I will have to go back a line or two. 'After going part way, I looked again to the north and to the south and seen nothing. As I was to step on the track, I looked to the north and I saw an object glance before me. It looked like a shadow, but being such a dense fog, and at the rate of speed it was traveling, I could not judge the distance of how far it could be away from me. I realized it must be a car and hastened to cross the track, and as I was leaving the track on the opposite side, I was struck by the far side of the car, in the hip.' You remember saying that, don't you? A. You mean by the 'track,'—you mean between the rails, don't you? I do.

"Q. I asked you whether you remember saying that? Do you or not? A. I don't remember; I might have said it.

"Q. You remember this testimony, 'To quote your exact words, first you looked once, or listened at the gate; then again when you were a few feet from the track?' 'Yes, sir.'

"Q. And then again as I was about to step on the track,' you looked and saw an object coming toward you?' A. 'Yes, sir.' Do you remember that? A.

Well, my foot was already down on the track at that time.

"Q. You didn't say that then, did you? A. I don't know as to that.  No.  I was in a pretty weak, nervous condition about that time, three years ago * * two years ago."

Mr. W. F. Schellenburg, the engineer on the car at the time of the accident, testified as a witness for defendant in part, that he had been working for the Southern Pacific Company twenty-five years; that he had been engaged in operating electric trains since about 1912; that the train left Union Station about five minutes late; "there was a light fog; it was not a real heavy fog, just a fog that would reflect back the headlight a little bit, but anyone not looking at the headlight or back of it could see fairly well"; that the rules of the railroad required the headlights and lanterns should be lighted from sundown to sunup, and any other time that weather conditions require them, such as fog or other conditions that require night signals; that the headlight was lighted; that they came to Fulton Station just before they came to the place where plaintiff was struck; that he slowed down at Fulton to see that there were no passengers and that the road crossing was clear, and then proceeded; that he whistled the usual road crossing whistle—two long and two short.

"Q. Now, was there any whistling in between that place and the place where Mr. Morser was struck? "A. No, sir.

"Q. Now, what was that whistling for?  For what road is that?  A. That was for the road crossing at * * near the Tannery road crossing; that is the other side of the trestle.

"Q. Do you know whether or not you had whistled for that road which is at Fulton?  A. Yes, sir.

"Q. Where is that whistling post? A. That is back about—well, the usual distance, about twelve hundred feet.

"Q. Do you recall, Mr. Schellenburg, whether any other signals of the approach of that train were given besides these crossing whistles? A. Yes, sir, I rang the bell. That is rung with a foot pedal. It is a rotary gong operated with air. You place your foot on a little lever and the bell rings.

"Q. Do you recall seeing Mr. Morser, the plaintiff here, before he was struck by the train? A. You mean just before—

"Q. When did you first see him? A. I saw him just as he was coming on the track.

"Q. He had not reached the track yet? A. Not quite.

"Q. Now, about how far were you from him? A. I was about thirty feet.

"Q. The train was thirty feet from him? A. Yes, sir.

"Q. Can you tell the jury about what speed you were going? A. I was going about twenty-five miles an hour."

That he immediately applied the air and tried to stop.

"Q. Do you recall whether you noticed whether he had stopped or whether he was walking, or walking fast or running or what he was doing? A. He was coming between a walk and a run, just—well, like a man with big long steps, like he was in a big hurry to get across. * *

"Q. When you saw him coming toward the track at the speed you have mentioned, I will ask you to tell the jury whether or not he paused in any way or stopped or gave any indication of letting the train go by? A. No, he did not. We were so close—"

Mr. Schellenburg testified on cross-examination in regard to the speed allowed "along there"; that it was left to the discretion of the engineer that

"through that country there would not be any engineers run over thirty at the most, maybe thirty-five"; "What speed could you make in your judgment. A. If I was—if it was right clear day and I could see, I would probably run up to thirty or thirty-five miles an hour through there. Did you testify in your examination before in this case, you could go as high as fifty? A. That is what I said, yes, but that is the speed limit that the company places on their right of way and fifty miles an hour what you are allowed to run where it is safe."

It will be noticed that Mr. Schellenburg contradicts the plaintiff's testimony as to the density of the fog at the time of the accident, and as to the speed of the train at that time; and in regard to the gong not being sounded at the time. His testimony varies from plaintiff's in other particulars.

Under these conditions of the conflicting testimony and all the circumstances of the case, it would seem that the question of negligence on the part of the defendant and that of contributory negligence on the part of the plaintiff were questions of fact to be determined by the jury under proper instruction of the court. Counsel for defendant in commenting upon the testimony of the plaintiff candidly state in their brief thus: "However, under the Oregon Constitution we have to take his testimony as it was given when he sought to evade the meshes of the tangled web he had woven in his effort to deceive."

Article VII, Section 3c, of our Constitution ordains in part as follows:

"In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall

be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict.''

At the close of plaintiff's testimony counsel for defendant moved the court for a judgment of nonsuit, and at the close of all of the testimony they asked the court to direct the jury to find a verdict for defendant, and also requested an instruction to the jury to find a verdict for defendant. These motions and requested instruction involve the same question.

It is a well-settled rule in this state that in reviewing the ruling of the trial court upon a defendant's motion for a nonsuit or directed verdict, all competent evidence, including that introduced by defendant, will be considered by the court in the light most favorable to the plaintiff; and every reasonable intendment, and every fair and legitimate inference, which can arise from the evidence, must be resolved in favor of the plaintiff: *Roberts* v. *Cohen,* 104 Or. 177, 192 (206 Pac. 295); *Saylor* v. *Enterprise Elec. Co.,* 110 Or. 231, 253 (222 Pac. 304, 223 Pac. 725).

The defendant urges that the plaintiff being a licensee, the defendant company owed him no duty except that which it might owe to a trespasser, that is, the duty not wilfully to injure him. The trial court instructed the jury upon this phase of the case as follows:

''I instruct you that the plaintiff in this case is known as a licensee. That is, he is a person whom the railroad company permitted to cross the track at the point where the accident occurred and he was not a trespasser. He had a right to cross, and it is the duty of the railroad company and of the pedestrian to exercise reasonable care to avoid accidents. The train has, however, the right of way and the preference of passing the point of intersection, for the

reason that the direction of the train movement is fixed by its rails and it cannot, like the pedestrian, change its course or come to an immediate stop.''

There is some conflict of authority regarding this question which can be accounted for in part by the variant facts of the different cases. Each case must stand upon its own foundation of facts.

In a somewhat early case of *Cassida* v. *Oregon R. & N. Co.*, 14 Or. 551 (13 Pac. 438, 12 Am. Neg. Cas. 516), where three children were on a trestle of the railroad and one was killed by a train, this court, in an opinion by Mr. Justice Thayer (see page 557), held that railroad employees, when running trains, and ''have reasonable grounds to apprehend that persons might, at some particular place upon the line of the road, be upon the track where the train must pass, they would be under an obligation to exercise due caution.'' The accident, in that case, occurred in a little village of five or six families and about eighty feet from a public crossing. The following language is found at page 558 of the Report:

''Generally, in running a locomotive and cars along a railroad track through the country, the probability of finding persons upon the track would be very slight; but in approaching a populous locality it would be greater, and more care should be exercised upon the part of those engaged in operating the train; and the requirement would be the same in approaching a place where people were known to congregate upon the track, or were known to be upon it.''

The case has been cited several times by this court.

In *Doyle* v. *Portland Ry., L. & P. Co.*, 71 Or. 576 (143 Pac. 623), this court in reversing the judgment of the trial court, in an opinion by Mr. Justice Ramsey, after citing and quoting from many authorities, said, as shown at page 587 of the Report:

"Mr. Thompson, in section 1725, Vol. 2, of his Commentaries on Negligence, says:

" 'We have seen that toward ordinary trespassers on railway tracks the general doctrine is that the railway company owes *no duty to keep a lookout,* though judicial opinion is not uniform on this question; but when persons are upon a railway track with the license or invitation of the company, express or implied, it is under a duty to keep a lookout for them, and to exercise ordinary care to discover them on the track, no less than to avoid injuring them after discovering them.'

"We approve this citation from Thompson."

In that case the testimony tended to show that the plaintiff, when injured, was crossing a bridge of the defendant, which had been used for several years by pedestrians, with the knowledge and acquiescence of defendant. At each end of the bridge the defendant had placed the following notice: "No thoroughfare. This is private property. Trespassing hereon forbidden." *Rook* v. *Schultz,* 100 Or. 482 (198 Pac. 234). See, also, *Summerfield* v. *Southern Pacific Co.,* 83 Or. 219 (163 Pac. 420); *Virginia M. Ry. Co.* v. *White,* 84 Va. 489, 500, 505 (5 S. E. 573, 10 Am. St. Rep. 874); *Troy* v. *Cape Fear Ry. Co.,* 99 N. C. 298 (6 S. E. 77, 6 Am. St. Rep. 521); *Byrne* v. *New York Ry. Co.,* 104 N. Y. 362, 366 (10 N. E. 539, 58 Am. Rep. 512); *Swift* v. *Staten Ry. Co.,* 123 N. Y. 645 (25 N. E. 378); White on Personal Injury on Railroads, § 874.

In *Harvey* v. *Deep River Log. Co.,* 49 Or. 583 (90 Pac. 501, 12 L. R. A. (N. S.) 131, note), the position of the defendant was that the plaintiff was riding on defendants' train as a licensee; that the defendant owed no duty to him except not to wilfully or wantonly injure him. The court, in an opinion by Mr. Chief

Jutice BEAN, at page 585 of the Report, held that the defendant could have refused to carry plaintiff, but if it "expressly or impliedly authorized or empowered the person in charge of the train to permit him to ride thereon, it must be responsible for negligence or want of care in his transportation."

It is stated in 33 Cyc., page 767, as follows:

"As a general rule a mere naked licensee on railroad tracks assumes the risks incident to his position, and except where his presence thereon is known, or may be reasonably expected, a railroad company is under no duty or obligation to be actively vigilant in providing against danger or accident to him; and is liable to him only for injuries caused by its active misconduct, or wilful or wanton injury. But where a person is on the right of way by the express or implied consent or invitation of the railroad company as where the public has habitually passed across or along the right of way at a certain place for a long time with the company's knowledge or consent, a railroad company has reason to anticipate his presence on the track at such point and is bound to use reasonable care to avoid injuring him, even though the employees in charge of the engine or cars which caused the injury were ignorant of such custom, or were unaware of his presence on the track."

In *Felton* v. *Aubrey,* 74 Fed. 350, 358, 361 (C. C. A., 6th Cir., before TAFT and LURTON, Circuit Judges, and HAMMOND, J.), the distinction between active and passive negligence with regard to the duty owing to a licensee is thoroughly discussed in an opinion by Judge LURTON. We quote:

"It seems to us that many of the American cases which we have cited fail to draw the proper distinction between the liability of an owner of premises to persons who sustain injuries as a result of the mere condition of the premises and those who come to

harm by reason of subsequent conduct of the licensor, inconsistent with the safety of persons permitted to go upon his premises, and whom he was bound to anticipate might avail themselves of his license. This distinction seems to be sharply emphasized in the case of *Corby* v. *Hill,* 4 Com. B. (N. S.) 556, and is a distinction which should not be overlooked. If there be any substantial difference between the legal consequence of permitting another to use one's premises and inviting or inducing such use, the distinction lies in the difference between active and the merely passive conduct of such a proprietor. It may be entirely consistent with sound morals and proper regard for the rights of others, that the owner of premises should not be held liable to one who goes upon another's premises for his own uses, and sustains some injury by reason of the unfitness of the premises for such uses, not subsequently brought about by the active interference of the owner. If such person goes there by mere sufferance or naked license, it would seem reasonable that he should pick his way, and accept the grace, subject to the risks which pertain to the situation. But, on the other hand, if, with knowledge that such person will avail himself of the license, the owner actively change the situation by digging a pitfall or opening a ditch, or obstructing dangerously the premises which he has reason to believe will be traversed by his licensee, sound morals would seem to demand that he should give reasonable warning of the danger to be encountered.

"This distinction seems to be more marked in cases where the evidence establishes in the public a permission or license to cross a railway at a given place or locality. If the company has so long acquiesced in the continuous and open use of a particular place as a crossing as to justify the inference that it acquiesces in that use, it would seem to follow that it was bound to anticipate the presence of such licensees upon its track at the place where such crossing had been long permitted. In such a case it would not be consistent

with due regard to human life, and to the rights of others to say that such licensees are mere trespassers, or that the duty of the acquiescing company was no greater than if they were mere trespassers. * *

"The rule we deduce from the cases best reasoned and most consistent with sound public policy is this: If the evidence shows that the public had for a long period of time, customarily and constantly, openly and notoriously, crossed a railway track at a place not a public highway with the knowledge and acquiescence of the company, a license or permission by the company to all persons to cross the track at that point may be presumed." (Citing authorities.) Persons availing themselves of such an implied license would not be trespassers, and the railroad company would come under a duty in respect to such licensees to exercise reasonable care in the movement of its trains at points where it was bound to anticipate their presence."

We take the following from a note in 36 L. R. A. (N. S.), pages 494, 495:

"In *Pomponio* v. *New York, N. H. & H. R. Co.*, 66 Conn. 528 (34 Atl. 491, 50 Am. St. Rep. 124, 32 L. R. A. 530), where the plaintiff's intestate was injured by a car switched across a populous crossing which had been used for many years, and was well known to the defendant to be so used, it was held at the trial that there was an implied invitation. The court in affirming the judgment stated that it made no difference whether there was an implied invitation, or whether the plaintiff's intestate was a mere licensee; 'for the duty which the defendant is here charged with violating is not the duty to keep its premises safe for use, but the duty of using due care not to injure by its own act those rightfully on its premises; and that duty is the same, whether those persons are on the premises as licensees or upon invitation, in the technical sense of that word.' The court said also: 'The land owner must not himself, by what has been

called "his own active negligence," injure either the licensee or the party invited, while they are upon his land.  This is a duty due to both equally.  Towards both, in this respect, he is bound to exercise the same amount of care.  Both are upon his premises, not as wrongdoers, but by his permission, and in respect to the duty in question, we know of no good reason why the nature and extent of it should not be the same in cases of license as in cases of invitation.' "

The Court of Appeals of New York recognized very clearly the distinction between liability for the passive and active negligence of the owner of premises to the licensee in the cases of *Barry* v. *Railroad Co.,* 92 N. Y. 289, and *Byrne* v. *New York Ry. Co.,* 104 N. Y. 363 (10 N. E. 539, 58 Am. Rep. 572).

In *Barry* v. *Railroad Co., supra,* the plaintiff's intestate had been run over by a train, of whose approach no warning was given, while crossing a railway at a place where the people of the vicinity had openly and continuously used as a crossway for some thirty years.  The court held that the acquiescence of the defendant, in the crossing of the tracks by pedestrians, amounted to a license and permission by the defendant to all persons crossing the track at this point.  At page 292 of the Report, Mr. Justice ANDREWS records the following language:

"These circumstances imposed a duty upon the defendant in respect of persons using the crossing, to exercise reasonable care in the movement of its trains. The company had a lawful right to use the tracks for its business, and could have withdrawn its permission to the public to use its premises as a public way, assuming that no public right therein existed; but so long as it permitted the public use, it was chargeable with knowledge of the danger to human life from operating its trains at that point, and was bound to

such reasonable precaution in their management as ordinary prudence dictated to protect wayfarers from injury."

As to the care which the defendant company was practically required to use in the operation of its car at the crossing in question, the testimony of the defendants' witness, Mr. W. F. Schellenburg, who had been a locomotive engineer for several years, is pertinent. His testimony tended to show that in his judgment, on a clear day, it would be safe to run thirty or thirty-five miles an hour along near the place of the accident. The jury would be warranted in inferring from this testimony that it would not be safe, in the exercise of reasonable care to run the car at that speed when it was dark and through a heavy fog, as the testimony tended to show were the conditions at the time of the accident. If the jury believed the testimony of the plaintiff they could reasonably find that the train was running at the rate of thirty miles per hour "or better."

It should be remembered that the place of the accident, according to the testimony, was in or near the suburbs of the large City of Portland. The defendant company, through its employees and agents, had a knowledge of the use of the footpath crossing for about eight years, and that persons would be liable to be on the track at that particular place, and had reasonable grounds to expect persons to be crossing the track, and they would be under the duty of exercising ordinary care to keep a lookout for such persons and to exercise ordinary care to discover them on the track and avoid injuring them.

*June* v. *Boston*, 153 Mass. 79 (26 N. E. 238), cited by defendant, was a case where the plaintiff's in-

testate was standing between the tracks facing the train near a private walk, not a highway or traveled place. The engineer first saw him at a distance of less than 300 feet and began to blow short whistles, but did not immediately put on the brakes. It was held that the company was not negligent. Mr. Justice Holmes guards the opinion from misunderstanding by stating thus at page 82 of the Report:

"There may be cases in which even unintended damage done to a licensee, by actively bringing force to bear upon his person, will stand differently from merely passively leaving land in a dangerous condition. But something more must be shown than that trains are run in the usual way upon a railroad, where the place does not of itself give warning of his probable presence, and when he is not seen until it is too late."

So in the present case the jury evidently believed from the testimony that the car of defendant company was run at a rate of speed in the dark and heavy fog that would be reasonably safe only when it was a clear day, and the circumstances were such that the operator of the car could see ahead at a reasonable distance; that it was at a pathway crossing where the people living in six or eight houses on one of the railroads were compelled to and did cross in going to and from their homes, with the assent of the railroad company; and that the servants of the defendant were well acquainted with all of the conditions and might reasonably expect that persons would be traveling over the crossing; that the train was run without sounding the gong or giving any special signal of its approach.

We think, under all the circumstances of the case, the question of the negligence of the defendants was

one of fact to be submitted to the jury, and that the instruction given by the court upon this point was proper.   The defendants charge that the plaintiff was guilty of negligence contributing to his injury.   Where there is a conflict of evidence as to the conduct of the plaintiff at the time of the alleged injury, or in case fair-minded men might draw different conclusions from the undisputed facts in the case, the question of contributory negligence is one of fact for the jury: *Saylor* v. *Enterprise Elec. Co.,* 110 Or. 231, 244 (222 Pac. 304, 223 Pac. 725) ; *Greenwood* v. *Eastern Oregon P. Co.,* 67 Or. 433, 441 (136 Pac. 336); *Webb* v. *Heintz,* 62 Or. 444, 447 (97 Pac. 753).

In *Hecker* v. *Oregon R. R. Co.,* 40 Or. 6, 9 (66 Pac. 270), it was held, in effect, that cases where nonsuits are allowed are exceptions in actions where the question of contributory negligence is involved and that such question is ordinarily one for the jury.   That the duty of a traveler on a public road approaching a railway crossing at grade requires him to exercise due and ordinary care to avoid being injured by a passing train and requires such traveler about to cross a railway track to look and listen for an approaching train, and a failure in that respect without reasonable excuse is considered negligence as a matter of law.   Mr. Chief Justice R. S. Bean, in that case, said, as shown at page 9 of the Report:

"Although it is negligence for a traveler not to look and listen for approaching trains before attempting to cross a railway track, the law does not undertake to determine whether he shall do so at any particular place or given distance from the crossing.   It is only required that he shall look and listen at the time and place necessary in the exercise of ordinary care; and this is generally a question for the jury, under all the circumstances of the particular case"; * *

In the case at bar the testimony tended to show that the plaintiff looked and listened when about seven feet from the track and saw and heard nothing; and, as he states, ''started on to cross with my right foot past the rail, stepping over with the left foot, which would bring me nearly in the middle of the track, turned me in that position (illustrating) I glanced and saw a faint shadow of a light with a shadow through it, and I judged from that it was a car, and momentarily I was dazed; but I hastened across the track as fast as I could.'' On cross-examination the plaintiff testified:

''Q. Why didn't you step back a foot? A. It would be much easier to step ahead after your foot was down on that ground between the rails—you could go ahead a great deal quicker than you could turn back from that rail and get back to safety.''

Mr. Schellenburg, the operator of the car, testified to the effect that the plaintiff, in crossing the track, was going between a walk and a run and that he did not stop at the crossing. As heretofore noticed, there was a conflict in the testimony in regard to the speed of the train and as to whether the fog was heavy and dark, or a light fog, as to how well one could see a car about that time, or a little later in the morning, when the ambulance arrived. Upon the part of plaintiff, the testimony tended to show that there was no warning of the approach of the car; the defendants' testimony indicated that the gong was sounded all the time on and near the crossing.

Under all the circumstances of the case it cannot be said, as a matter of law, that plaintiff was guilty of contributory negligence, without a re-examination of the facts in violation of Section 3c, Article VII, of the

Constitution of Oregon.   We cannot say there is no competent evidence to support the verdict.   The matter was for the jury to determine.   Negligence is never presumed.   On the contrary, the presumption is that the plaintiff Morser exercised due care and caution: *McBride* v. *Northern Pacific R. Co.,* 19 Or. 64 (23 Pac. 814); *Kirby* v. *Southern Pacific Co.,* 108 Or. 290, 298 (216 Pac. 735).

The jury evidently believed that when plaintiff cautiously approached the track, a place of danger, and looked and listened, and saw no sign of an approaching train, and heard no sound, he as an ordinary prudent man, would not be expected to remain there, and that in crossing the track he acted as carefully as ordinary men of ordinary judgment and prudence do under like circumstances.   A person in the situation of the plaintiff at the time cannot be charged with contributory negligence merely because he failed to avail himself of the privilege of refraining for a time from crossing the track and insuring his safety beyond all doubt.   See *Saylor* v. *Enterprise Elec. Co., supra; Toney* v. *Interstate Power Co.,* 180 Iowa, 1362 (163 N. W. 394); *Rambo* v. *Empire Dist. Elec. Co.,* 90 Kan. 390 (133 Pac. 553).   There was no error of the trial court in denying defendants' motions for a nonsuit and directed verdict and refusing to instruct the jury to return a verdict in favor of defendant.

Defendants assign error of the court in instructing the jury as follows:

"This is a case commonly called a personal injury case, based upon a claim of negligence.   The party making the claim has the burden of proof, and by burden of proof is meant the responsibility of showing to you the better story and the recovery must be had

upon the ground named in the complaint and not upon any other."

This instruction was somewhat preliminary and does not explain what is meant by "preponderance of evidence," but later in the charge the court plainly instructed the jury that the burden was upon the plaintiff to prove the alleged negligence by a preponderance of the evidence, and that "preponderance" meant the weight of the evidence. There was no error in this respect.

The defendant complains of two instructions to the jury because they eliminated the element of proximate cause. The court charged the jury as follows:

"The defendants are in no sense insurers; that is, they are not liable merely because an accident occurred. In order to impose liability upon them the burden is upon the plaintiff in the first instance to show that the defendants were negligent and that the negligence so shown was the proximate cause of the injury."

The court also mentioned the gist of the instruction as to proximate cause in other portions of the charge and the point seems to be fully covered. A careful examination of the entire charge of the court to the jury discloses that the issues in the case were plainly and fairly submitted to the jury.

The judgment of the Circuit Court should be affirmed.